UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
SHANE RHOOMS,

                                      Plaintiff,

        -against-                                                        11 CV 5910
                                                                                 (PKC) (RER)

CITY OF NEW YORK, ROBERT ORTLIEB, Individually,
ROBERT HENDERSON, Individually, JOSEPH SEMINARA,
Individually, DEVON FREED, Individually, and JOHN and
JANE DOE 1 through 10, Individually (the names John and Jane
Doe being fictitious, as the true names are presently unknown),

                                      Defendants.
--------------------------------------------------------------------------------X
--------------------------------------------------------------------------------X
SHANE RHOOMS,

                                      Plaintiff,                        13 CV 5006
                                                                           (PKC) (RER)

        -against-

MICHAEL ENRIGHT, Individually, FRANK SCIORITINO,
Individually, MATTHEW WALKER, Individually, GREGORY
BARRETT, Individually, FRANCIS KIERNAN, Individually,
ADAM WRIGHT, Individually, MICHAEL LEAVER,
Individually, DINO ANSELMO, Individually, KENNETH
FUNG, Individually, STEVEN XUEREB, Individually,

                                      Defendants.
--------------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO UNSEAL GRAND JURY MINUTES**


**LEVENTHAL & KLEIN, LLP**
Attorneys for Plaintiff Shane Rhooms
45 Main Street, Suite 230
Brooklyn, New York 11201
(718) 722-4100

## PRELIMINARY STATEMENT

Plaintiff Shane Rhooms ("Rhooms") respectfully submits this memorandum of law in support of his application for an Order unsealing the grand jury minutes of the testimony of defendant officers Joseph Seminara, Robert Henderson, Robert Ortlieb, and Devon Freed in *People of the State of New York v. Shane Rhooms*, Kings County Supreme Court indictment no. 7974/2010, and ordering the Kings County District Attorney's Office ("KCDAO") to produce said grand jury minutes to the parties herein.  Rhooms seeks the grand jury minutes for use in his federal civil rights actions pending before this Court because the minutes contain the testimony of the defendant officers' false identification of Rhooms as the perpetrator of a crime, the critical disputed fact at the heart of Rhooms's federal civil rights claims.

## PROCEDURAL HISTORY

On December 5, 2011, Rhooms commenced his initial action bearing index number 11 CV 5910 (PKC)(RER) in the United States District Court for the Eastern District of New York against the City of New York and certain members of the New York City Police Department ("NYPD"), including officers Joseph Seminara, Robert Henderson, Robert Ortlieb, and Devon Freed, for violating his civil rights in connection with his false arrest and malicious prosecution beginning on or about September 6, 2010.  On or about June 14, 2012, Rhooms filed an amended complaint in that action.  Leventhal Decl., Ex. A.

On September 6, 2013, Rhooms filed a related action bearing index number 13 CV 5006 (PKC)(RER) against Michael Enright and other defendant officers in the United States District Court for the Eastern District of New York for violating his civil rights arising from the same false arrest and malicious prosecution.  Leventhal Decl., Ex. B.  The related actions have been consolidated before this court.

**STATEMENT OF FACTS**

On September 6, 2010, at approximately 12:00 a.m., Shane Rhooms arrived at Webster Hall, a Manhattan night club, located at 125 East 11th Street, New York, New York. Leventhal Decl. Ex. A at ¶ 12. Rhooms remained continuously at Webster Hall until approximately 5:00 a.m. *Id.* at ¶ 13. While Rhooms was at Webster Hall, NYPD Officers Joseph Seminara, Robert Henderson, and Robert Ortlieb were involved in a foot pursuit of an unknown suspect in the vicinity of 222 Lenox Road, Brooklyn, New York. *Id.* at ¶ 14. While the unknown suspect was running away from the officers, the suspect turned and fired several gunshots at Officers Seminara, Henderson, and Ortlieb and the officers returned fire ("the shooting"). Leventhal Decl., Ex. B at ¶14. The suspect was not apprehended. *Id.* at ¶ 14.

Shortly after the shooting, NYPD officers falsely arrested at least two purported eyewitnesses to the shooting and unlawfully imprisoned them in the 67th precinct. *Id.* at ¶ 17. While imprisoned, the two purported eyewitnesses were verbally and physically threatened in an attempt to coerce them into making false statements implicating Rhooms in the shooting. *Id.* at ¶ 18.

On September 6, 2010 at approximately 4:30 a.m., Trevor Perez, one of the purported eyewitnesses described in the preceding paragraph, while unlawfully imprisoned and under the coercion of NYPD officers, signed a photo of Rhooms and wrote on that photo "This is The guy that I Saw Runing From The Cops with the Gun. Drass In all Black (sic)." Leventhal Decl., Ex. C at pp. 74 to 127 (T. Perez Dep. Tr.), & Ex. D (NYPD photo of Shane Rhooms signed by Trevor Perez). Trevor Perez did not testify before the Kings County grand jury investigating the shooting. Leventhal Decl., Ex. E at p. 35 (L. Lieberman Dep. Tr.); Ex. C at p. 5 (Perez Dep. Tr.).

On September 6, 2010, at approximately 5:00 a.m., defendant Seminara falsely identified Rhooms as the perpetrator of said shooting from a photo array that was assembled by defendant Freed. Leventhal Decl., Ex. B at ¶ 24.

On September 6, 2010, shortly after defendant Seminara's false identification of Rhooms in the photo array, defendant Freed printed a "wanted poster," prominently displaying Rhooms's photograph, which was thereafter circulated throughout the 67th police precinct. Leventhal Decl., Ex. B at ¶ 21, & Ex. F at p. 61 (D. Freed Dep. Tr.).

On September 6, 2010, at approximately 4:15 p.m., Rhooms voluntarily arrived at the 67th precinct stationhouse at the request of NYPD officers who told him that they were investigating a fight which had occurred the prior evening. Leventhal Decl., Ex. A at ¶ 16. Once at the stationhouse, Rhooms was imprisoned inside an interrogation room and interrogated for an extended period of time by NYPD officers, including defendant Freed. *Id.* at ¶ 17. During that interrogation, NYPD officers accused Rhooms of involvement in the shooting that occurred on September 6, 2010. *Id.* at ¶ 18. Rhooms repeatedly informed the officers present, including defendant Freed, that he was at Webster Hall in Manhattan when the shooting occurred in Brooklyn, and also indicated that he would cooperate with their investigation. *Id.* at ¶¶ 19-20. Rhooms further informed the officers present that he was with a number of other individuals at Webster Hall who could verify his presence at the time of the shooting. *Id.* at ¶ 21. NYPD officers did not investigate Rhooms's legitimate and readily verifiable alibi. *Id.* at ¶ 22.

On September 7, 2010, at approximately 12:45 a.m., defendants Seminara, Henderson, and Ortlieb, falsely identified Rhooms, purportedly in separate corporeal lineups, as the perpetrator who fired gunshots at them on September 6, 2010. *Id.* at ¶ 24. Defendant Henderson had viewed Rhooms's photo on the "wanted poster," prior to viewing Rhooms in a corporeal lineup. Leventhal Decl, Ex. B at ¶ 22-23, & Ex. G at 75-82 (R. Henderson Dep. Tr.).

3

Defendant Ortlieb had access to said "wanted poster," prior to viewing Rhooms in a corporeal lineup. *Id.*

Rhooms was imprisoned until his arraignment in Kings County Criminal Court on false charges filed in an accusatory instrument under docket no. 2010KN071284. Leventhal Decl., Ex. A at ¶ 25. Said accusatory instrument was filed based on the false identification of Rhooms by the defendant officers as the perpetrator of the shooting. Leventhal Decl., Ex. H (Kings County Criminal Court Complaint).

Upon information and belief, the defendant NYPD officers withheld information of Rhooms's alibi from KCDAO. Leventhal Decl., Ex. A at ¶ 27.

As a result of the defendant officers' wrongful conduct in falsely identifying Rhooms as the perpetrator of the shooting, the KCDAO presented the defendant officers as witnesses to the grand jury, including defendant officers Seminara, Henderson, and Freed. Leventhal Decl., Ex. E at pp. 15-16, 35 (Lieberman Dep. Tr.); Ex. G at pp. 28-29 (Henderson Dep. Tr.); Ex. I at pp. 5-6, 10-11 (J. Seminara Dep. Tr.); Ex. C at p. 5 (Perez Dep. Tr.). Said defendant officers falsely identified Rhooms as the perpetrator of the shooting to the Kings County grand jury. Leventhal Decl., Ex. B at ¶ 36; Ex. E at p. 15-16 (Lieberman Dep. Tr.).

On September 10, 2010, as a result of the defendants' false identification and false testimony, a Kings County grand jury voted an indictment against Rhooms, which falsely charged Rhooms with the Attempted Murder of defendants Seminara, Henderson, and Ortlieb. Leventhal Decl., Ex. B at ¶¶ 33-36.

Rhooms was imprisoned from on or about September 6, 2010 through on or about September 24, 2010, when he was released on his own recognizance after his attorney presented evidence of his innocence to the KCDAO. Leventhal Decl., Ex. A at ¶¶ 25-30. Said evidence included video surveillance footage from Webster Hall confirming that plaintiff was at Webster

4

Hall on September 6, 2010, at the time of the shooting, as well as cell phone records that placed Rhooms in Manhattan at the time the shooting. *Id.* at ¶ 30.

On December 21, 2010, the KCDAO dismissed Rhooms's indictment, which included all of the criminal charges levied against Rhooms as a result of the false identification and testimony of the defendant officers. *Id.* at ¶ 31.

Defendants Henderson, Ortlieb and Seminara maintain that Rhooms is the perpetrator of the shooting. Leventhal Decl., Ex. G at p. 67, 120-121 (Henderson Dep. Tr.); Ex. J at p. 157 (Robert Ortlieb Dep. Tr.); Ex. I at p. 74, 94-99 (Seminara Dep. Tr.)

## ARGUMENT

## PLAINTIFF HAS A PARTICULARIZED NEED FOR DISCLOSURE OF GRAND JURY TESTIMONY

In evaluating applications to unseal grand jury minutes, federal courts have required that a plaintiff demonstrate a "particularized need" for the unsealing. *Douglas Oil v. Petrol Stops Northwest*, 441 U.S. 211, 230 (1979); *Myers v. Phillips*, 2007 WL 2276388 (E.D.N.Y) *2; *Frederick v. New York City*, 2012 4947806, *7 (S.D.N.Y 2012.) To demonstrate a particularized need, the plaintiff must show "that (a) the material sought is needed to avoid a possible injustice, (b) the need for disclosure is greater than the need for secrecy, and (c) the request is structured to cover only material so needed." *Cullen v. Margiotta*, 811 F.2d 698,715 (2d Cir. 1987). The facts herein support a finding that Rhooms has a particularized need for the unsealing of the grand jury minutes requested.

  A.  **Plaintiff Needs The Grand Jury Material To Avoid a Possible Injustice.**

As video surveillance recordings and cell phone records unequivocally prove that Rhooms was in Manhattan at the time of the shooting in Brooklyn, the grand jury testimony of the defendant NYPD officers concerning their observations of the perpetrator of the shooting and their false identification of Rhooms is highly probative on the crucial facts at issue in Rhooms's

5

federal civil rights claims herein - - the defendants' purported identification of Rhooms as the perpetrator of the shooting.

For Rhooms to satisfy his burden of proof for his false arrest, malicious prosecution, and denial of right to fair trial claims against the defendants, Rhooms must prove, inter alia, that there was no probable cause for the criminal charges, and that the defendant officers created the false identification of Rhooms.  *See, e.g., Ackerson v. City of White Plains,* 702 F.3d 15, 19-20; *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)); *Jones v. City of New York,* 2013 WL 6047567, *9 (E.D.N.Y. 2013).

The grand jury indictment creates a presumption of probable cause to prosecute, *see Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983), and the defendant officers' testimony in the grand jury was relied upon by the grand jury in its deliberations resulting in the indictment.  Moreover, the defendant officers continue to maintain that they have correctly identified Rhooms as the perpetrator of the shooting.

In *Frederick,* a malicious prosecution case, the district court held that "courts have . . . recognized an interest in avoiding 'possible injustice' under *Douglas Oil* where plaintiffs adduce facts that strongly suggest misconduct at the grand jury sufficient to rebut the presumption of probable cause if ultimately proven true." *Frederick,* 2012 WL 4947806 at *9-10.

Rhooms submits that the facts herein support a finding that the defendant officers conspired to falsely identify Rhooms as the perpetrator of the shooting and then falsely identified Rhooms to the grand jury.  As the defendant officers continue to maintain that their false identifications were lawful, Rhooms must impeach the defendant officers to prove that they falsely identified Rhooms as the perpetrator of the shooting by demonstrating that "the police witnesses 'have not made a complete and full statement of facts . . . that they have

6

misrepresented or falsified evidence . . . or otherwise acted in bad faith.'" *Boyd,* 336 F.3d at 76 (quoting *Colon*, 60 N.Y.2d at 82-83).

The grand jury heard testimony of the defendant officers to determine whether probable cause existed to believe that Rhooms was the perpetrator of the shooting. Thus, the defendant officers' grand jury testimony is highly probative as it concerns the critical facts in dispute herein - - the defendant officers' observations of the perpetrator and the perpetrator's actions, their conduct toward the perpetrator, and their false identification of Rhooms as the perpetrator.

Notably, the typical showing of particularized need arises when, as here, a litigant seeks the grand jury testimony at trial to impeach a witness, to refresh their recollection and to test the witnesses' credibility. In such instances, "denial of access to grand jury minutes can result in 'possible injustice' if the rights of the parties are effectively destroyed by inability to view key evidence." *Douglas Oil*, 441 U.S. at 237; *Frederick*, 2012 WL 4947805 at *7.

Moreover, the Second Circuit Court of Appeals has recently held that the use of grand jury testimony is admissible in federal civil rights actions for impeachment purposes. *Marshall v. Randall,* 719 F.3d 113, 116 (2d. Cir. 2013) (holding that the grand jury testimony of police officers was properly admitted by the trial court for impeachment purposes).

For the foregoing reasons, the facts herein support a finding that a denial of Rhooms's unsealing application would result in the possible injustice of withholding evidence that Rhooms requires in seeking the just resolution of his civil rights claims herein. The disclosure of the grand jury testimony to Rhooms will promote the public and judicial interest of insuring the just resolution of Rhooms's civil rights claims herein. *See Dale v. Bartels,* 532 F.Supp. 973, 976 (S.D.N.Y. 1982) ("As this Court noted before, the public interest and the judicial interest in the just resolution of this lawsuit would seem to present a 'particularized need' which would require [grand jury minutes] production.").

7

### B. The Need for Disclosure is Greater Than the Need For Secrecy

The U.S. Supreme Court has identified five objectives served by grand jury secrecy: 1) to prevent the escape of those who may be the subject of an indictment; 2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent individuals subject to indictment or their friends from importuning the grand jurors; 3) to prevent subornation of perjury or tampering with witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; 4) to encourage free and untrammeled disclosures by persons with information concerning the commission of crimes; and 5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation and from the expense of standing trial where there was no probability of guilt. *U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958).

The Supreme Court's concern for protecting "particular" grand juries is not present here as the grand jury proceedings sought by Rhooms only involve his indictment as the perpetrator of the shooting. The grand jury proceedings were completed and closed in September 2010, over three years ago. Additionally, Rhooms has been exonerated by the KCDAO and all charges concerning that indictment have been dismissed. As such, there is no danger of any target fleeing, nor is there any danger of suborning perjury at the grand jury stage or at any subsequent trial, nor is there any danger of interference with grand jury deliberations, as all proceedings have been completed. *See, e.g., Vazquez v. City of New York,* 2013 WL 2449181, *3 (S.D.N.Y. 2013).

Any concern that disclosure will chill witnesses from freely testifying before a "future" grand jury is irrelevant here, since, upon information and belief, only police witnesses testified during the grand jury proceedings at issue herein, and Rhooms only seeks the grand jury testimony of the defendant officers. Law enforcement "agent[s are] accustomed to testifying to

8

the results of [their] investigations . . . When [they] testified to the grand jury it was within [their] contemplation that [they] would testify at trial (if trial were held) and that at trial, following [their] direct testimony the grand jury minutes would have to be produced . . . Accordingly, [they] had no justifiable expectation of confidentiality as to [their] grand jury testimony." *Dale*, 532 F. Supp. at 976. Moreover, the "[r]easons supporting secrecy where a private citizen testifies to the grand jury . . . do not in logic apply to a Government agent. A Government agent is not likely to be inhibited by subsequent disclosure in the sense that a business man, victim of extortion or racketeering who testifies to the grand jury might be." *Id.* at 976.

Additionally, the concern that disclosure of grand jury testimony might chill future grand jury testimony does not exist here because the grand jury testimony Rhooms seeks would have been disclosed to Rhooms prior to his criminal trial under *People v. Rosario*, 9 N.Y.2d 286 (1961).

For the foregoing reasons, the facts herein support a finding that the public interest in disclosure outweighs the interest in continued secrecy of the grand jury minutes sought by Rhooms.

### C. Plaintiff's Request for Grand Jury Testimony is Structured to Cover only Material so Needed

Rhooms seeks only the grand jury testimony of the defendant officers who testified against Rhooms during the grand jury proceedings resulting in Rhooms's indictment as the perpetrator of the shooting. The grand jury testimony requested is needed for credibility and impeachment purposes and to overcome the presumption of probable cause created by the indictment. Thus, Rhooms's request is tailored to cover only that material needed to insure the just resolution of his civil rights claims.

## CONCLUSION

For the foregoing reasons, this Court should grant plaintiff's application for an Order unsealing the grand jury minutes in People of the State of New York v. Shane Rhooms, Kings County Supreme Court indictment no. 7974/2010, and ordering the Kings County District Attorney's Office to produce said grand jury minutes to the parties herein.

Dated: Brooklyn, New York
April 25, 2014

LEVENTHAL & KLEIN, LLP
*Attorneys for the Plaintiff*
45 Main Street, Suite 230
Brooklyn, New York 11201
(718) 722-4100

By: \_\_\_\_\_/s/_____
JASON LEVENTHAL (JL1067)