1                     UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
2

3    --------------------------------X
                                     :
4    SHANE RHOOMS,                   :
                                     :  11-CV-5910 (PKC)
5              Plaintiff,            :
                                     :
6                 v.                 :
                                     :  225 Cadman Plaza East
7    CITY OF NEW YORK, et al.,       :  Brooklyn, New York
                                     :
8              Defendants.           :  February 24, 2015
     --------------------------------X
9
            TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
10            BEFORE THE HONORABLE RAMON E. REYES, JR.
                   UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the Plaintiff:        BRETT KLEIN, ESQ.
                               Leventhal & Klein, LLP
14                             45 Main Street, Suite 230
                               Brooklyn, New York 11201
15

16

17   For the Defendants:       KIMBERLY JOYCE, ESQ.
                               New York City Law Department
18                             100 Church Street
                               New York New York 10007
19

20   Court Transcriber:        SHARI RIEMER, CET-805
                               Typewrite Word Processing Service
21                             211 N. Milton Road
                               Saratoga Springs, New York 12866
22

23

24

25

     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service

1  (Proceedings began at 10:34 a.m.)

2          THE CLERK:  Civil Cause for Final Pretrial

3  Conference, Docket No. 2011-CV-5910 and 13-CV-5006, <u>Rhooms v.</u>

4  <u>City of New York</u>.

5          Counsel for plaintiff, please state your name for

6  the record.

7          MR. KLEIN: Brett Klein for the plaintiff.  Good

8  morning.

9          THE CLERK: Counsel for the defendant.

10          MS. JOYCE: Kimberly Joyce for all defendants.  Good

11  morning, Your Honor.

12          THE COURT: Mr. Klein, you sound like a man who's not

13  getting a lot of sleep.

14          What's going on?

15          MR. KLEIN: So I think we touched on this during the

16  phone conference for today, Judge.  We've essentially

17  completed all depositions culminating with the plaintiff as

18  you heard last week.  There was recently supplementation as

19  recently as last week by the defendants of important documents

20  such as the crime scene file which I didn't have but I think

21  we have most of what we need.  There are a couple of items

22  that we're discussing back and forth that we can raise today.

23          And the remaining issue is whether plaintiff will be

24  relying on his treating therapist or calling an expert which

25  we also touched on the other day.  We're trying to locate the

3

1  therapist.  Apparently she left the psychotherapy center that

2  she worked at and we're trying to figure out where she is.  So

3  we're in the process of working that out.

4          Then I would say the final, the final issue –

5          THE COURT: Is she is a psychologist or psychiatrist

6  or --

7          MR. KLEIN: She might --

8          THE COURT: -- yoga specialist?

9          MR. KLEIN: She might be a licensed social worker.

10         THE COURT: Is there any licensing board that has

11 to – they have to keep their business contacts current with

12 that you could check?

13         MR. KLEIN: Yes, we're looking into it and I don't

14 think it will be necessarily that hard to find out but we --

15 the fact is we're trying to locate her as we speak.

16         So then I'd say the final, final issue is Ms. Joyce

17 indicated the City intends to move for summary judgment and I

18 think they're asking on liability.  So they're asking -- and

19 we were going to file this consolidated complaint

20 consolidating both actions and dropping what we felt

21 comfortable dropping to streamline as much as possible before

22 motion practice.

23         THE COURT: You were going to have conversations with

24 Ms. Joyce about streamlining things as far as claims and

25 defendants.  Have you had that conversation?

4

1        MR. KLEIN: We broached it.  We have dozens of

2   transcripts that we're reviewing to confirm what we feel

3   comfortable doing in that regard.  So we were saying --

4   discussing that I think -- I have post trial due this week,

5   the summary judgment motion in a couple of weeks.  If we could

6   have maybe 30 days to file our complaint I think the City's

7   plan would be to respond to that with a premotion conference

8   in any event as to the fundamental motions prosecution type

9   claims.

10        And I think that the City's requested that we stay

11   any expert discovery pending having the motion on liability.

12        MS. JOYCE: Your Honor, if I may.  What Mr. Klein and

13   I have been discussing would be it might make the most sense

14   to while he's still trying to find this therapist that if we

15   stay expert discovery because the City will just be moving on

16   liability.  If we are successful I know the court's thinking

17   on the successful motion but if we are successful then damages

18   won't be an issue and we won't need to explore expert

19   discovery and if we are not successful then presumably Mr.

20   Klein will have been able to locate this therapist.

21        The therapist is, Mr. Klein indicated, was a treater

22   but she did diagnose the plaintiff was having PTSD.  So I did

23   speak to Mr. Klein that if we he is going to be offering her

24   opinion testimony as to the diagnosis that he would need to

25   make a requisite expert disclosures before we would continue

5

1  with expert discovery.  But she cannot just be -- testify as a

2  treating doctor, that she's offering an opinion as to a

3  diagnosis as to PTSD which would make her an expert.

4         THE COURT: Why can't a treating offer a diagnosis?

5         MS. JOYCE: She would be offering her opinion as well

6  and that would make her an expert giving expert testimony as

7  to the opinion, as to the diagnosis of the plaintiff as having

8  PTSD.

9         THE COURT: Do you have a case that says that?

10         MR. KLEIN: I believe that's actually incorrect.

11  There's a provision in the rule that if you're going to call a

12  treater you might have to just give a disclosure that does not

13  include a report which we would do.

14         THE COURT: I can find the rule right -- right here.

15  It's 26 --

16         MS. JOYCE: 26(f) I believe.

17         THE COURT: Something like that.  Not 26(f).  26 --

18                    [Pause in proceedings.]

19         THE COURT: 26(a)(2)(c).  Witnesses who do not

20  provide a written report unless other stipulated or ordered by

21  the court.  If the witness is not required to provide a

22  written report this disclosure must state the subject matter

23  on which the witness is expected to present evidence under

24  Federal Rule of Evidence 702, 703 or 705.  702 is --

25         MS. JOYCE: And that's expert testimony?

6

1        THE COURT: Testimony by expert witnesses.  So the

2   rule says that even someone who is offering expert testimony

3   does not necessarily have to provide a written report.

4        MR. KLEIN: I think it comes down to --

5        THE COURT: The person -- the people who have to

6   provide a written report are covered under 26(a)(2)(b).

7   Unless otherwise stipulated or ordered by the court this

8   disclosure must be accompanied by a written report prepared

9   and signed by the witness if the witness is one retained or

10  specially employed to provide expert testimony in the case or

11  one whose duties as the parties employee regularly involved

12  giving expert testimony.

13       What that means to me and what I understood the case

14  law to say is that if you have someone who you after

15  litigation is commenced say okay, I need you to provide expert

16  testimony giving your expertise, experience, what have you,

17  you have to provide a full expert disclosure under

18  26(a)(2)(b).

19       If the person existed prior to the litigation and

20  was providing services of an expert type to someone including

21  diagnosis, prognosis, causation, whatever, if it's relevant to

22  treatment that person does not have to provide a full blown

23  expert report but has to provide 26(a)(2)(c)(ii), a summary of

24  the facts and opinions to which the witness is expected to

25  testify.

7

1    MS. JOYCE: And as long as -- and then just, Your

2  Honor, you had mentioned if she was -- if the person was

3  retained before litigation.  She was not -- I guess not

4  retained but plaintiff did start seeing her in the midst of

5  litigation but as long as we would be provided what you just

6  read from the rule as to some sort of written report I

7  believe.

8    MR. KLEIN: It's not a report.  It's a disclosure by

9  counsel saying this is the substance of what she's going to be

10  talking about which is essentially the facts and conclusions

11  of her treatment but we've done those disclosures before and

12  we could do it here.  But there's no need -- I don't think the

13  rule hinges on --

14    THE COURT: That is a very -- I'm sorry, Mr. Klein,

15  for cutting you off but that is a very interesting question.

16  Is someone who is retained after litigation starts to provide

17  services, not necessarily retained to testify as an expert?

18  Is that person really an expert that's covered under

19  26(a)(2)(b)?

20    MR. KLEIN: My understanding is the answer is no.

21  This is a treating doctor, not a retained forensic expert

22  who's being asked to review and not treat.  This is a treating

23  doctor and I don't think -- my understanding of the rule is

24  that it doesn't hinge on predates or post dates.  Presumably

25  an injury post dates an incident, you know, the date of an

8

1  incident and is causally related to something that happened

2  before the treatment.  It's a treating doctor as opposed to a

3  doctor called in to review the treatment records and give an

4  opinion based on all that.

5          THE COURT: So if I go using the prior case to an

6  example to Waldbaum's and slip on some eggs and rack my head

7  against the freezer cabinet and I run to a lawyer and the

8  lawyer says we got a great case, go to an orthopedist and get

9  treated because we need an expert opinion, why isn't that

10  person a true expert and not a treating?

11          MR. KLEIN: Because that's a treating -- first of

12  all, I would -- in terms of the motivation of a lawyer to do

13  that, I mean to start -- the person is either going to have a

14  real injury or not and if there is a causally related injury

15  and that person is being treated for it as opposed to -- and

16  diagnosed, as opposed to a -- my understanding of the rule is

17  an expert who's retained to review the records of treatment,

18  not a treating doctor.  There's no doctor patient

19  relationship.  It's in the nature of someone who's looking at

20  the records of prior treatment and saying I've seen the

21  treating doctors' treatment, I saw the MRI results, I saw

22  this, I saw that, and I've done an IME now and my opinion is

23  is that's --

24          THE COURT: One could argue then that a plaintiff

25  never has to produce an expert report because it's always

1  going to be a treating because you're always going to send

2  someone for treatment.

3          MR. KLEIN: That person I just described is

4  someone -- is the type of expert we've retained in other cases

5  and we've served expert disclosures for routinely.

6          THE COURT: We're not there yet.  I'm not -- I don't

7  know how I would rule on it and that's an issue that -- is

8  that an issue for me or Judge Chen?  I mean it's discovery,

9  right, but it also deals with the extent to which a person can

10 testify at trial.

11         Look, if you're fine with the summary report -- I

12 call them support reports then there's no big deal and you're

13 going to know -- you're going to know the person's -- you're

14 going to give him a CV and stuff like that or just the report?

15         MR. KLEIN: Well, they have his psychotherapy records

16 from months and months or a year or so of treatment and that's

17 in this -- in that type of incident in the type of scenario

18 where you're going to call the treating doctor, the doctor is

19 going to testify as to the treatment and diagnosis --

20         MS. JOYCE: But, Your Honor, I'd want to cross-

21 examine her on her CV on how many times she's testified, if

22 she's testified --

23         THE COURT: Well, you can cross-examine her.  You're

24 going to take her deposition.  You can ask her these things

25 and if she doesn't remember you can -- I mean it's discovery

1  so you can say I want -- why can't you get those things in

2  discovery from a treating.

3            MR. KLEIN: You can do those in any case with a

4  treating doctor.

5            THE COURT: So you can get the same thing as an

6  expert, a full blown 26(a)(2)(b) expert report but just not

7  here's everything prior to the deposition.

8            MS. JOYCE: Well, Your Honor, I just don't see why I

9  wouldn't be able to have the CV and a list if she's testified

10  before prior to me deposing her like we would in any other

11  case where you're deposing --

12            THE COURT: Why couldn't you send them a discovery

13  request or subpoena this non party --

14            MS. JOYCE: Well, Your Honor --

15            THE COURT:  -- saying give me X, Y and Z?

16            MS. JOYCE: Because I don't have any of her

17  information.  Mr. Klein says that she is trying to locate

18  him -- her.  He doesn't have it.

19            THE COURT: Once he locates her --

20            MR. KLEIN: I mean they have the last known that I

21  have.

22            THE COURT: Once he locates her he gives you the

23  current address.  You send her a non party Rule 45 subpoena

24  saying I know you retained -- you were treating Mr. Rhooms.  I

25  want to know -- I want a copy of your CV.  I want a copy --

11

1   the testimony you've given in the -- you can get -- there's

2   more than one way to get to Kansas.  Right?

3            MR. KLEIN: But I'm just -- just in terms of the word

4   retainer, I think this is not a case where she -- this doctor

5   was retained by us.  I think that's the distinction.

6            THE COURT: But fine.  She's not retained by you.

7   Let's say I buy that.  What would preclude them from doing a

8   Rule 45?

9            MR. KLEIN: I guess it -- yes, that's discovery.  I

10  think they could issue whatever relevant -- demands for

11  whatever relevant discovery they think they're entitled to.

12           THE COURT: So the question then becomes why don't

13  work together and get the information.

14           MR. KLEIN: We could discuss it.

15           THE COURT: But we're not there yet because you want

16  to move for summary judgment.

17           MS. JOYCE: Right, Your Honor.

18           THE COURT: Do you think you have a -- if not a slam

19  dunk, a good shot at getting the case, the entire case kicked;

20  yes?

21           MS. JOYCE: Yes, Your Honor.  I've spoken about it

22  with my office extensively and we really honestly do

23  believe --

24           THE COURT:  So it doesn't matter what the

25  consolidated complaint is going to say.  If Mr. Klein scales

12

1  down the claims, the defendants, it doesn't matter because

2  you're still going to get the case kicked no matter how much

3  it's narrowed?

4          MS. JOYCE: Correct.  I just don't -- I'd rather not

5  write my premotion conference letter to Judge Chen without

6  knowing who remains in the case and what claims remain in the

7  case.

8          THE COURT: Why wait 30 days to do that and then have

9  a conver -- I mean this is a 2011 case and -- well, there are

10 two cases.  2011 and 2013?

11         MS. JOYCE: Yes, Your Honor.

12         THE COURT: We've been waiting -- we've been waiting

13 for a while to get these cases teed up.  Thirty days may not

14 seem like a lot of time but it's 30 days.  Why can't you send

15 in a premotion letter in two weeks?

16         MS. JOYCE: Because, Your Honor, Judge Chen requires

17 a three page premotion conference letter I believe should be

18 detailed as to what claims remain, what claims I believe can

19 be dismissed, the defendants that remain.  I don't know what

20 claims -- I don't want to write this letter for '15 because

21 Mr. Klein has about 20 claims in one case, eight claims in

22 another.  I don't want to write the premotion conference

23 letter on all these claims and all these defendants if some --

24 if it's going to be scaled down.

25         THE COURT: The number of claims and the number of

1   defendants is somewhat immaterial.  It's not -- we know

2   what -- we know what happened; right?  And you say what

3   happened does not rise to the level of a constitutional

4   violation any way, shape or form.  He was picked out of a

5   lineup and Detective Freed based on that had probable cause to

6   arrest him.  It's simple.  It really boils down to that;

7   right?

8            MS. JOYCE: Yes, Your Honor.

9            THE COURT: Simple three page letter.  It doesn't

10  matter who, what, where, what else.  There was probable cause

11  to arrest Mr. Rhooms.

12           What else?  What other -- let's say Detective Freed

13  gets out on summary judgment.  Who else do you get?

14           MR. KLEIN: The -- at least the three -- there's -- I

15  don't think there's any question of Mr. Rhooms' innocence here

16  and I think in a sense is a factor that has to be considered

17  by the court and an inference to be drawn in plaintiff's favor

18  and you have three -- you have the circumstances of the ID.

19  First of all, the three witness officers who had little to no

20  opportunity to see the shooter.  Then the circumstances of how

21  Mr. Rhooms picture came out and then how 25 hours later the

22  circumstances of how these three got it, got the same guy when

23  Mr. Rhooms was conclusively per the arresting detective in a

24  different borough when it happened.  And there's questions of

25  fact about whether they falsely arrested him, maliciously

1   prosecuted him.

2          MS. JOYCE: Your Honor, just if I may be heard.

3   Lieutenant Seminara, Lieutenant Ortlieb, Lieutenant Henderson

4   are named as defendants in the Rhooms one action.  They are

5   victims.  They were shot at.  They did not participate in any

6   way in the investigation other than Lieutenant Seminara

7   identified the plaintiff in a photo array and then all three

8   identified him in a lineup.  They were not privy to any part

9   of the investigation, did not play any part in Detective Freed

10  investigating.  They were simply victims who also happened to

11  be police officers and now that discovery is closed and all of

12  the defendants' depositions have been taken, Mr. Klein does

13  not have any credible evidence that there's any -- that there

14  was any collusion or any sort of taint in the photo array and

15  the lineups.

16         THE COURT: Page 1.

17         MS. JOYCE: Right.  So --

18         THE COURT: So you can write that tomorrow.

19         MS. JOYCE: I could.

20         THE COURT: And Detective Freed, tell me about

21  Detective Freed.

22         MS. JOYCE: Detective Freed -- well, because Your

23  Honor was asking who -- if Detective Freed was left out who

24  would remain.  So that was my response.  They should not even

25  be -- for lack of personal involvement they should not even be

15

1   in the case as defendants in the first place because they are

2   solely -- they are complaining victims in this context

3          Now, Detective Freed again, Your Honor, I believe

4   wholeheartedly that this case -- that there are no

5   constitutional violations in this matter and that nobody

6   should be a defendant.  There should not be a case.  But Freed

7   was a first grade investigating detective.  He received

8   information from a witness that the witness now disputes but

9   at five a.m. regardless of what happened beforehand, at five

10  a.m. there was a photo array put together with the plaintiff's

11  photo in and Sergeant -- now Lieutenant Seminara picked the

12  plaintiff out of that photo array.  That was 5:00 in the

13  morning.  That was over 12 hours before the plaintiff turned

14  himself in voluntarily to the police.  So whatever our

15  argument would be, whatever happened beforehand as of five

16  a.m. when Sergeant Seminara picked him out of the lineup there

17  was probable cause to arrest.

18          THE COURT: Let me ask you something.  That's Mr.

19  Perez, yes?  You were talking --

20          MS. JOYCE: Yes.

21          THE COURT: Trevor.

22          MS. JOYCE: Yes.

23          THE COURT: So you're saying -- Trevor says he

24  pressured me into picking the rooms.

25          MS. JOYCE: Well --

16

1          MR. KLEIN: I told him it wasn't him.

2          MS. JOYCE: Excuse me.  There are two versions of

3     events.  Our version of events is that --

4          THE COURT: Then there's a genuine dispute of fact.

5          MS. JOYCE: Well, no.

6          THE COURT: Hold on.  Let me --

7          MR. KLEIN: The motion [inaudible] must be favorable

8     to the non movant.

9          MS. JOYCE: And we are going to be taking Trevor

10    Perez's version of events for the motion.  We're not going to

11    be taking --

12         THE COURT: What is the most favorable version of

13    Trevor Perez's story from Mr. Rhooms perspective?

14         MS. JOYCE: Well, Trevor Perez says he saw nothing,

15    that he was brought into the precinct and told to identify

16    Shane Rhooms, that he was forced to do so by a Spanish

17    accented officer.  No such officer exists.  There are many

18    discrepancies in Trevor Perez's story that if the motion is

19    not successful and we get to trial I will explore with Mr.

20    Perez but there is no Spanish accented officer.

21         THE COURT: But you can't -- but Judge Chen can't

22    take that that's what you say and what you say can't be used

23    in a motion.  It's what did Trevor Perez.

24         MR. KLEIN: And he describes two detectives.  One

25    Spanish but one White and Detective Freed said last week I was

17

1   involved in the taking of Perez's statement and supervised all

2   the circumstances of that statement and I'm aware of every

3   aspect of what Trevor Perez said and did and this is what I

4   say which is the opposite of what Trevor Perez says.

5            THE COURT: Well, you can't take what Detective Freed

6   said.  You have to take what Trevor Perez says.

7            MS. JOYCE: And we are.

8            THE COURT: If he was pressured -- I'm going to

9   summarize --

10            MR. KLEIN:  But in terms of there being one -- he

11   says there's two detectives.

12            THE COURT: He was pressured to finger Mr. Rhooms and

13   he said that's not him but he signed the picture anyway.

14            MR. KLEIN: Under duress.

15            THE COURT: How is that constitutional?

16            MR. KLEIN: And Freed says --

17            THE COURT: Let us say if Detective Freed beat the

18   crap out of him --

19            MR. KLEIN: And Detective Freed --

20            THE COURT:  -- as long as a witness fingers someone

21   they can rely on that for probable cause?

22            MR. KLEIN: And Detective Freed --

23            MS. JOYCE: No, Your Honor.  They were not relying on

24   Trevor Perez's identification for probable cause.  They relied

25   on Sergeant Seminara's photo array identification of the

18

1    plaintiff for probable cause.

2            THE COURT: And they only got the picture of the

3    plaintiff from Trevor Perez.

4            MS. JOYCE: No, according -- excuse me.

5            MR. KLEIN: Detective Freed testified the other

6    day --

7            MS. JOYCE: No, according to Trevor Perez they --

8    Detective Freed came into the interview already having the

9    photograph of Shane Rhooms and said this is the person I want

10   you to finger.  So whatever happened in that room with Trevor

11   Perez, Trevor Perez is saying that they already came into this

12   interview with the person that they wanted me to finger.  They

13   already had his name.

14           THE COURT: But how did he get that picture?

15           MS. JOYCE: I mean --

16           THE COURT: Did the photo array that --

17           MR. KLEIN: Seminara.

18           THE COURT:  -- Officer or Detective Seminara --

19           MS. JOYCE: He was Sergeant Seminara at that time.

20           THE COURT: Sergeant Seminara, the photo array that

21   Sergeant Seminara viewed, was that after --

22           MR. KLEIN: Yes.

23           THE COURT:  -- Perez or before Perez?

24           MS. JOYCE: After Perez.

25           MR. KLEIN: And Freed concedes --

19

1          THE COURT: So -- please --

2          MR. KLEIN:  --- it would not have happened without

3  Perez.

4          THE COURT: So I'm going to change the facts on you

5  only a little bit.  They beat the crap out of Trevor Perez to

6  finger Rhooms.  The picture that they brought in to show him

7  this is the guy, right, bam, bam, bam, bam.  He's like yeah,

8  yeah, that's the guy.  They take that picture, put it in front

9  of another witness and say here's a photo array.

10          MR. KLEIN:  Who couldn't give a description from

11  four hours earlier.

12          THE COURT: How can that --

13          MS. JOYCE: That's your -- that's your statement.

14          THE COURT: And that's what's going to be used on a

15  summary judgment motion because -- well, actually --

16          MR. KLEIN: Their words, male black, no facial

17  description.

18          THE COURT: Even if -- there are two divergent

19  stories here.  I understand you think you got a slam dunk.

20  I'm telling you it's not a slam dunk and it's going to -- this

21  case is not going to be tried until 2017 because if you lose

22  the summary judgment motion don't dare ask for an

23  interlocutory appeal because that will be just the worst

24  because this is ridiculous.  This case needs to be tried.

25          But you want to wait 30 days.  You want 30 days to

20

1  amend the complaint or excuse me, consolidate the complaint,

2  the complaints.  Drop, maybe drop some people because there

3  are a lot of people that don't need to be in this case.  I

4  mean you have a core group of people.

5          THE COURT: That's right.  We're closely looking at

6  that.  We had a statute issue and that's why if you recall

7  there was an issue where those names weren't provided in a

8  formal disclosure but they were in paperwork and we've brought

9  them in.  We're prepared to review the record which is what

10  we're doing and see who's really needed.

11          MS. JOYCE: And I've spoken to Mr. Klein and

12  obviously we wouldn't stipulate to any adding of defendants or

13  adding claims.  We understand he is just going to be reviewing

14  to potentially remove defendants and remove claims.

15          THE COURT: How much time after the consolidated

16  complaint is filed do you need just to send in your premotion

17  letter?

18          MS. JOYCE: Your Honor, I could -- one to two weeks

19  if the court would allow.

20          THE COURT:  How much time do you need to respond,

21  two weeks, Mr. Klein?

22          MR. KLEIN: Yes.

23          THE COURT: That's two months.  Two months and we're

24  not going to be any further towards resolution one way or the

25  other really and then it's going to be six to eight months of

1 briefing the way you guys -- I know you're very busy, Ms.

2 Joyce, but it -- all right.

3                  [Pause in proceedings.]

4        THE COURT: April 3rd consolidated complaint.  April

5 17th defendant's premotion letter.  May 1st, plaintiff's

6 opposition.  Understand that if the motion gets denied you are

7 going to have a very, very, very short time to do expert

8 discovery.

9        MS. JOYCE: Yes, Your Honor.

10        THE COURT: In the nature of two months.  There will

11 be no extensions.  So I'm going to actually put that in now.

12 The discovery period will end two months after Judge Chen

13 issues a decision on the motion for summary judgment or two

14 months after she tells you you can't make the motion which is

15 unlikely.  I don't think she has that power but she's very

16 persuasive.

17        No extensions.  So you need to be ready, Mr. Klein,

18 have the identity -- the address and all that information for

19 your treating social worker, whatever.  I'm going to ask you

20 to work with Ms. Joyce on getting the same type of information

21 that would be disclosed in a full blown expert disclosure.

22 CV, list of cases that she's testified to in and any

23 publications.

24        You will need to send Mr. Rhooms to a Rule 35 exam

25 promptly.  When you see whatever decision on the summary

22

1  judgment motion or a request for a premotion conference don't

2  wait and get that ball rolling.

3          MS. JOYCE: Yes, Your Honor.

4          THE COURT: And then you're going to do your

5  depositions and you'll have two months to do all of that.

6          MS. JOYCE: Your Honor, I just wanted to -- there was

7  just two other things.  One was we -- yesterday was supposed

8  to be the deposition of non party defendant Jason -- non party

9  witness Jason Brown and I just wanted to put on the record

10 that he dix not -- the deposition did not go forward because

11 the address that I had been provided by Mr. Klein which was

12 the same address that was on the DD-5 for a case in Brown's

13 interview they were told that there's no such person that

14 resides at that address.  I do know that Mr. Rhooms has

15 additional contact information including a phone number for

16 Mr. Brown but I do not have that in my possession.

17          We had attempted -- Mr. Klein had attempted to get

18 Mr. Brown in for a deposition I believe in 2013 but Mr. Brown

19 said that the date we had chosen it was my understanding did

20 not work for him.  I then asked Mr. Klein to provide me with

21 his contact information.  When I received it I sent a subpoena

22 for him and was told that he does not live at that address any

23 more.  So --

24          THE COURT: What do you want me to do about it?

25          MS. JOYCE: I would ask that -- he was not deposed.

1   I subpoenaed him.  I made efforts to have him come in.  I

2   would ask that he be precluded from testifying or from any

3   affidavits being used in a summary, an opposition summary

4   judgment motion since he did not come for his deposition.

5         MR. KLEIN: I don't know exactly what efforts were

6   made.  If he's on the buzzer on the building that's where --

7   that's the address he gave the detectives.  If they've looked

8   for a forwarding address.

9         THE COURT: Does Mr. Rhooms have his current address

10  and telephone number?

11        MR. KLEIN: The address I believe he testified the

12  other day was that he lived at this building which is where he

13  lived at the time of the incident.  We could -- if they're

14  saying that someone there -- since he's not there we could

15  look into whether he's moved and try to get someone to look

16  into it just as they could.

17        MS. JOYCE: Yes, I provided --

18        THE COURT: But to preclude the person if he moved?

19        MS. JOYCE: I provided the affidavit to Mr. Klein

20  that said per current tenant there's no such person at that

21  address and Mr. Rhooms at his deposition last week said that

22  he had a phone number for Jason Brown and I asked that it be

23  provided in a transcript.

24        MR. KLEIN: But they hadn't been in touch in years

25  but it's the last known --

24

1      MS. JOYCE: And Mr. Rhooms had gone I believe last

2 year or the year before with a private investigator to that

3 address and spoke with Jason Brown he testified to.  So as of

4 I believe last year that was the address that we knew.

5      MR. KLEIN: So I think efforts have to be made to

6 find out where he went if he really moved.

7      THE COURT: I don't understand the application.  If

8 he's given -- if Mr. Rhooms has given you all the information

9 that he has about Mr. Brown and you are unable to locate Mr.

10 Brown why is that Mr. Rhooms fault?

11      MS. JOYCE: Well, Your Honor, I mean discovery is now

12 closed.  Both sides made efforts to depose this witness.  I

13 subpoenaed him to the address that I had, did not pan out.

14 Mr. Klein attempted to get him in and it was my understanding

15 actually spoke with him while he was living at that address.

16      THE COURT: When was that?

17      MS. JOYCE: In 2013 I believe.

18      MR. KLEIN: Yes, our understanding is that he lived

19 there.  I don't --

20      THE COURT: Two years ago.

21      MR. KLEIN:  I have no knowledge that he moved or

22 whether he's still there, if this person was truthful or if

23 the process server accurately reported.  I don't know the

24 latest but as of when we were trying to depose him in 2013 my

25 understanding is that he lived in that building.

1          THE COURT: And you haven't spoken to him since?

2          MR. KLEIN: No.  I don't think he should be

3   precluded.  I think efforts can be made to find out if he's

4   moved or if he's still there.  I don't know if they looked at

5   the names on the building.

6          THE COURT: This is not hide the ball.  If you know

7   where the guy is you have to disclose it.

8          MS. JOYCE: I'd be happy to try and call him.

9          THE COURT: But if he's moved and Mr. Klein and Mr.

10  Rhooms don't know where he is currently and then two months

11  from now they find out why should -- why would he be

12  precluded?

13         MS. JOYCE: Well, Your Honor, he did not come

14  forward.  He was --

15         THE COURT: That's not Mr. Rhooms fault.

16  Precluding -- you see, precluding a witness from testifying

17  presumes that there is some fault on the part of the party

18  that wants his testimony.  It's a real drastic step.  So I

19  mean the book is not closed on Mr. Brown.  I'm not ready to

20  preclude him yet.  If it turns out Mr. Rhooms knew where he

21  was, wasn't telling and --

22         MS. JOYCE: Well, then --

23         THE COURT:  -- if you can prove that then different

24  story.

25         MS. JOYCE: Well, Your Honor, I know that Mr. Rhooms

1  has claims to have Jason Brown's phone number.  If that could

2  be provided to me then I can attempt to locate him but I just

3  do not have that information.  Only Mr. Rhooms does.

4          THE COURT: By when -- today is Tuesday.  By

5  Thursday, the telephone number, last known telephone number.

6          MS. JOYCE: And then the final thing was that at the

7  deposition for the plaintiff on Friday I provided releases for

8  updated medical records.  The last day I have for his therapy

9  psychiatrist, the therapy was from April of I think it's 2013.

10 He said he received some treatment since then.  So I provided

11 a release.  Mr. Klein said he didn't have an issue with

12 updating those records.  I did also provide --

13         THE COURT: Well, we don't know where she is.

14         MR. KLEIN:  We're trying to locate her.  That's the

15 issue.  We're trying to locate her a) to get any additional

16 records, and b) --

17         THE COURT: You have two months after the decision on

18 summary judgment to do your discovery on experts which this is

19 part of.  So --

20         MS. JOYCE: Well, there's also the 160.50 releases

21 for prior arrests.  Mr. Rhooms was arrested I believe four

22 times before our incident and part of the way that Detective

23 Freed testified that he found -- got the plaintiff's name was

24 by doing criminal association checks who --

25         THE COURT: I thought you had the prior -- no, you

27

1  have the subsequent arrests.

2         MS. JOYCE: Right.

3         THE COURT: That were sealed.

4         MS. JOYCE: Your Honor, and I did further -- I did

5  further speak to my office and I do not believe it's as Mr.

6  Klein represented that it was immediately sealed on the date

7  the CD was given.  It was sealed on the day that the CD

8  expired which is not -- CDs don't typically expire,

9  automatically expire.  So it said immediately which we take to

10 mean on the date which was the 21st of --

11        MR. KLEIN: It's a stamp that says sealed 160.55.  It

12 wouldn't say that unless it was immediately sealed.

13        MS. JOYCE: I've spoken to Ms. Gutrufontous [Ph.],

14 spoken to my direct supervisor, spoken to the paralegal that

15 obtained the file and that's our understanding that it was not

16 sealed as of the date that we got it and that as of today --

17 if we had gone today to try to get it it would be sealed

18 because it expired on the 21st of February of this year.

19        THE COURT: All right.  What about the 160.50s from

20 the prior arrests?

21        MR. KLEIN: So they must have asked for this in 2011

22 when we first did discovery.  We objected.

23        THE COURT: And what did I say?

24        MR. KLEIN: In dis -- what's that?

25        THE COURT: What did I say when you objected?

1         MR. KLEIN: We never -- it never came up and then in

2   discovery in any event in their investigation of Mr. Rhooms

3   they printed out and produced to us every single time he's

4   been subject of a stop and frisk, a summons, any court records

5   ever that were -- they have access this database.  Any time

6   he's been in the court system, the stop and frisk system, the

7   arrest system, the summons system, and they have the dates,

8   addresses, charges like this of anything about him, any time

9   he's had contact with the system.

10        MS. JOYCE: And I don't --

11        MR. KLEIN: And they were aware of it and were

12  allowed to ask him about it at the deposition and it's now

13  that they're saying we want releases for these underlying

14  records which would basically give them the -- they know the

15  arrest charges.  They were able to ask him about it.  It's all

16  in their background checks on Mr. Rhooms.  When they're

17  looking into him, they look into everything about him, where

18  he lived, his phone numbers.  They've got his phone --

19  everything.  So they've had all of the records other than

20  apparently the underlying arrest report which says criminal

21  possession of a marijuana arrest.

22        THE COURT: What will the 160.50 provide you that you

23  don't already have?

24        MS. JOYCE: Your Honor, I -- we did not provide as

25  comprehensive a listing as Mr. Klein is suggesting.  What I

1  would like --

2          THE COURT: What will the 160.50 provide you that you

3  do not already have?

4          MS. JOYCE: It could give names of criminal

5  associates in the narr --

6          THE COURT: How is that relevant?

7          MS. JOYCE: Because as I said Detective Freed said

8  when he was trying to obtain the identity of the purported

9  hooter he did criminal association checks.  Jason Brown said

10  that he had been hanging out with friends including a person

11  named Courtney.  Mr. Rhooms testified that he has previously

12  been arrested with this person Courtney.  That could be a way

13  that Detective Freed found --

14          MR. KLEIN: Detective Freed didn't --

15          THE COURT: Detective Freed would know this.

16          MR. KLEIN: And he said he didn't.

17          MS. JOYCE: He said he didn't recall.

18          MR. KLEIN: So he's going to be refreshed from Shane

19  Rhooms, his arrest records that he didn't.  He has all the

20  background check records.

21          MS. JOYCE: That's inaccurate.

22          MR. KLEIN: Didn't you -- he didn't do background

23  checks?

24          THE COURT: Did --

25          MR. KLEIN: All the arrests in the summer.

1          THE COURT: Wait, wait.  When Detective Freed does

2   anything in an investigation he does a DD-5 like when he talks

3   to someone; right?

4          MR. KLEIN: Except for Trevor Perez.

5          MS. JOYCE: Not always, Your Honor.

6          MR. KLEIN:  He's supposed to do.

7          THE COURT: S if he talked to Courtney --

8          MS. JOYCE: We're not saying he spoke to Courtney. He

9   did criminal record checks to find criminal associations.

10         MR. KLEIN: There's no record of that.

11         MS. JOYCE: That's what he testified to and he

12  doesn't need to document every step including going on doing

13  computer checks.

14         THE COURT: I don't understand how this information

15  is relevant to whether -- to anything in this case.  So --

16         MS. JOYCE: Your Honor, the arrest records might give

17  information about criminal associates which would support

18  Detective Freed's what he testified to, the fact that he did

19  criminal association checks and would show how they came to

20  Shane Rhooms name by Jason Brown saying he was hanging out

21  with Courtney earlier in the day, by doing an association

22  check for this person Courtney, finding out Courtney had been

23  arrested with Shane.

24         THE COURT: Let us say he was -- Mr. Rhooms was

25  arrested with Courtney two years earlier for argument sake and

1   you find that out.  So what?  So then because of that it's

2   more likely than not that Detective Perez two years later got

3   this picture of Shane Rhooms because of his association with

4   Courtney and then --

5           MR. KLEIN: Courtney wasn't in the shooting, wasn't

6   part of the shooting.  He's not alleged to be part of the

7   shooting.  Detective Freed said the key --

8           THE COURT: Da, da, da.

9           MR. KLEIN: Sorry.

10          MS. JOYCE: Your Honor, the way -- let's go with what

11  the court says and the motion is not going to be granted and

12  we're going to go to trial.  Detective Freed is going to

13  testify that he spoke with Jason Brown.  Jason Brown said I'd

14  been hanging out earlier in the day with Biggie, Shane,

15  Courtney and some girls.  Detective Freed does criminal

16  association checks because he says, and this is past summary

17  judgment assuming we get to trial that Trevor Perez pointed

18  out that Jason Brown and another individual as being friends

19  of the shooter.  So they're all brought in.  Detective Freed

20  speaks to Jason Brown.  Jason Brown says I was hanging out

21  with these individuals.  Detective Freed does criminal

22  association checks of those individuals, gets to the name

23  Shane, Shane Rhooms as having been arrested with one of those

24  individuals previously.

25          The arrest reports would support the fact that they

32

1  had been arrested together and that this was a criminal --

2  that this was someone that was associated with Jason Brown,

3  Courtney and Shane Rhooms.

4           THE COURT: So what?

5           MR. KLEIN: They're not alleged to be involved in the

6  shooting.

7           THE COURT: So what?

8           MR. KLEIN: They're blocks away.

9           THE COURT: So because the -- because Jason Brown,

10  Courtney and Shane Rhooms hang out together and Shane Rhooms

11  and Courtney were arrested together before therefore it is

12  more likely than not that Shane Rhooms shot at these officers.

13           MS. JOYCE: No.

14           THE COURT: I don't understand.

15           MS. JOYCE: Therefore it would be acceptable to put

16  that person's photo in a photo array to see if he could

17  potentially be the shooter.  I'm just talking --

18           THE COURT: But we don't have the photo -- do we have

19  the photo array?

20           MR. KLEIN: Yes.

21           MS. JOYCE: Yes.

22           MR. KLEIN: Detective Freed says the reason why I did

23  the photo array and I could not have done it without this was

24  Trevor Perez.

25           THE COURT: Who else was in the photo array other

1   than Mr. Rhooms?

2           MR. KLEIN: Fillers.

3           THE COURT: So he didn't put Courtney?

4           MR. KLEIN: No.

5           THE COURT: He didn't put --

6           MR. KLEIN:  Jason.

7           THE COURT:  -- Mr. Brown or anybody else?

8           MS. JOYCE: No, Your Honor.

9           THE COURT: Why not if --

10          MS. JOYCE: He didn't put the photo array together.

11  I'm not sure why not.  It was another detective.

12          MR. KLEIN: It was his right hand man he says that

13  does everything with.

14          THE COURT: His right hand man is who?

15          MR. KLEIN: Barrett.

16          THE COURT: Barry?

17          MR. KLEIN: Barrett.

18          THE COURT: Barrett.

19          MS. JOYCE: Who put the photo array together on --

20          THE COURT: Did you depose Barrett?

21          MR. KLEIN: Yes.

22          THE COURT: What did he -- how did he --

23          MR. KLEIN: He doesn't remember.

24          THE COURT: So now we're going to recreate the -- I

25  don't understand it.  I'm sorry.

34

1          MR. KLEIN: Detective Freed says --

2          THE COURT:  I'd like to see a letter that shows the

3   relevance of this information.

4          MS. JOYCE: Sure.

5          THE COURT: I'm not -- I'm sorry, Ms. Joyce.  I'm not

6   -- I don't get it.

7          MS. JOYCE: I would be more than happy to put in a

8   letter, Your Honor.  That's fine.

9          MR. KLEIN: Detective Freed says without Trevor Perez

10  I will not have had --

11         THE COURT: You will get a chance to respond to the

12  letter.

13         MR. KLEIN: Okay.

14         THE COURT: This is discovery.  I mean discovery is

15  closed.

16         MR. KLEIN: That's also why we're objecting.

17         THE COURT:  This is the first I'm hearing of it.

18  So --

19         MS. JOYCE: Your Honor, I apologize.  I tried to

20  depose Mr. Rhooms sooner.  I would have if he -- he did not

21  recall dates, times, locations, who he was arrested with at

22  his deposition.  I would have requested them earlier but he

23  just does not remember this information.

24         THE COURT: So the only reason you want these general

25  160.50s is because he couldn't recall.

1          MR. KLEIN: Don't you have his arrest in the

2   background -- on the --

3          MS. JOYCE: No.

4          MR. KLEIN: I believe you do but --

5          MS. JOYCE: I have --

6          MR. KLEIN: You asked him about it.  You asked him

7   about other arrests, were you arrested on this date for --

8   were you arrested on this date, did you have an arrest on that

9   date.

10          MS. JOYCE: Right.  I know arrest dates.  I don't

11   know locations, charges, who he was arrested with.

12          THE COURT: Charges?  Why -- charges are irrelevant.

13          MS. JOYCE: Okay.  Fine.  I don't know locations or

14   who he was arrested with.

15          THE COURT: Why are locations relevant?

16          MS. JOYCE: Location to -- location to the building

17   if this case goes to trial will become relevant.  Whether or

18   not Mr. Rhooms, how often he was at the location would become

19   relevant if this case goes to trial.

20          MR. KLEIN: I don't think two or three sealed

21   arrests.  He testified that he hung out in that area because

22   he lived near there and he's friends with people there.  So

23   there's no question about whether he was by the building.

24   Those sealed arrests don't shed light on that.  Those are

25   sealed arrests from years before.

1      MS. JOYCE: Well, Your Honor, the court's invited me

2  to write a letter and I will be more than happy to put this

3  all in writing and then Mr. Rhooms can respond.

4      THE COURT: None of this was information that

5  Detective Freed or Detective Barrett or any of these folks

6  knew at the time.

7      MR. KLEIN: Correct.  And they also could have asked

8  for the release even without his deposition years ago and --

9      MS. JOYCE: Well, they knew --

10     THE COURT: I'm just concerned --

11     MS. JOYCE: -- about the prior arrest from July 2010

12  because that is the photo that they used in the photo array.

13  He had been arrested three months prior.

14     THE COURT: If they didn't know any of this how is it

15  relevant?

16     MS. JOYCE: They may have.  I don't think that's

17  clear from the depositions.

18     THE COURT: Well, they're certainly going to remember

19  it if you show it to them.  So it's -- if you get it they're

20  not going to see it.  It's going to be you and you alone until

21  trial because it then becomes creating, recreating history.

22     MR. KLEIN: I think it's refreshing recollection.

23     THE COURT: This information should have been

24  requested months ago.  I mean if it was relevant, if it was

25  important and you knew -- I mean you deposed Detective Freed

37

1  and you asked him some of these questions?

2            MR. KLEIN: Yes.

3            THE COURT: And he said he didn't recall?

4            MR. KLEIN: Right.

5            THE COURT: When did you depose him?

6            MR. KLEIN: The first part of his deposition was in

7  December of 2013 and the final -- the last part of his

8  deposition was last week.  We did three, like three and three

9  hours one day, three hours another day.

10            THE COURT: All right.  March 6th I'd like to see Ms.

11  Joyce's letter.  You have anything between now and March --

12  I'm sure you have things between now and March 6th but any --

13  summary judgment motions, trials, anything that you need a

14  little more time?  This is not we have to have this yesterday.

15            MS. JOYCE: No, no, no.  I mean I have things

16  happening but nothing that would prevent me from getting the

17  letter in.

18            THE COURT: All right.  Then --

19                    [Pause in proceedings.]

20            THE COURT: Two weeks later, March 20th, a response.

21            MR. KLEIN: Sure.

22            THE COURT: All right.  So that's a letter on 160.50

23  releases March 6th, response March 20th.

24            What else?

25            MR. KLEIN: We've been asking and there's apparently

1  been no dispute but we just wanted to make sure we had

2  every -- in this case the police commissioner went to the

3  press after the dismissal and said --

4          THE COURT: No, Shane Rhooms is the guy.

5          MR. KLEIN: And the detective's investigators stand

6  by the ID.  Even though the investigator believed detective

7  last week says he's innocent, I mean we got the wrong guy but

8  I didn't know until after --

9          THE COURT: The lead investigator being?

10          MR. KLEIN: Detective Freed.

11          THE COURT: He said that?

12          MR. KLEIN: Well, he said it but it's a fact that no

13  one could really incredibly deny.

14          THE COURT: He said that at his deposition?

15          MR. KLEIN: Yes.  The phone records confirm he's in

16  Manhattan.  He's on video in Manhattan and Freed says -- and

17  he had the phone records on the day of the arrest and the

18  Metrocard records confirm it as well.  Detective Freed says

19  well, I didn't know until I got the video for sure.  From the

20  get-go I had a very weird feeling about this case.  I never

21  had someone innocent but this was either that --

22          THE COURT: And when did he get the video?

23          MS. JOYCE: It was sent to the detectives on

24  September 8th from Webster Hall.

25          MR. KLEIN: The day that the grand -- that he

39

1   testified on the grand jury.

2            THE COURT: And he was indicted?

3            MR. KLEIN: And he says that the next day he went to

4   speak with the DA to tell him --

5            THE COURT: How many days was he locked up?

6            MS. JOYCE: Eighteen days, Your Honor.  He was

7   arrested on September 6th, indicted on the 8th or the 10th and

8   released on the 24th and the case was dismissed on December

9   22nd.

10           THE COURT: But they had the video the day he was

11  indicted.

12           MR. KLEIN: And he says that he looked at the video

13  immediately and because he already had serious concerns

14  because of the phone records which he had on the day of the

15  arrest with his handwritten notes showing West 11th Street by

16  Webster Hall next to the relevant phone entry as the location

17  of that cell tower.  And he also had the detailed Metrocard

18  information.  So by -- within two days of the arrest he's got

19  the video.  He says he immediately goes to the DA and tells

20  the DA this guy should be let go and he's upset that the DA

21  kept Shane Rhooms in.  The DA says a) I wanted to speak to

22  Trevor Perez and Detective Freed kept him from me and number

23  two, I never spoke to Trevor, this Trevor Perez signed photo

24  until the deposition three years later.

25           THE COURT: So what -- you want what now?

40

1          MR. KLEIN: Well, we want to know that we have the

2     statements of any emails statements, press release, anything.

3     We have the newspaper clipping.

4          THE COURT: What does that have to do with anything?

5          MR. KLEIN: It goes to -- it's relevant to his

6     damages that they're blaming and the three witnesses -- victim

7     officers who have pressed the charges against him and made the

8     false statements are still saying they're going to testify at

9     trial that Shane Rhooms did this even though --

10          THE COURT: They said that at their deposition?

11          MR. KLEIN: Yes.  And counsel will say that's their

12     position even though he's conclusively on a video.  So the

13     fact that Ray Kelly issued a statement through Paul Brown, the

14     spokesperson saying they stand by their identification, it's

15     part of Shane Rhooms' continuing damages that he talked about

16     that up until this very day anyone who Googles him sees the

17     police commissioner saying yes, it was dismissed by the DA but

18     we stand by that this is the shooter.  This guy is labeled a

19     cop --

20          THE COURT: So you want these three officer's public

21     statements?

22          MR. KLEIN: No.  Ray Kelly issued a statement.  We

23     just want all writings from the police department whether

24     they're emails, drafts of -- comments about a press release

25     internal, if it's --

41

1          THE COURT: If the statement was made and that's part

2    of his damages, why do you need to see the backup?

3          MR. KLEIN: Well, I want to know if they claim they

4    spoke with Detective Freed about this for the comment because

5    he says no one asked him and that he believes that Shane

6    Rhooms is innocent and they're portraying in the press that

7    he's still guilty.  So we just want to -- it's relevant to his

8    claim that they're still blaming him for this and he's

9    innocent, conclusively innocent.  It goes to his emotional

10   distress.

11         THE COURT: Same letters.  I'm not convinced.

12         MR. KLEIN: Okay.  And the final issue, Judge, was --

13         THE COURT: That's March 6th and March 20th.

14         MR. KLEIN: These detectives that the three officers

15   who were the victim of the shooting who pressed the charges

16   against Shane Rhooms even though I think the evidence will

17   show that they had at most seconds at midnight to see the

18   shooter and never saw his face again after that.  They put in

19   for medals as a result of this incident and we have the --

20         THE COURT: You can put in for medals?

21         MR. KLEIN: Yes.

22         THE COURT: Someone doesn't have to put you in?

23         MS. JOYCE: Medals were put in for them because they

24   were victims of a shooting.

25         THE COURT: And they got medals?

42

1    MS. JOYCE: They received the conduct cross.  I

2  believe what Mr. Klein is stating is he demanded the medal day

3  video and then he photographed from medal day.  Medal day took

4  place almost two full years after the incident in this case

5  and eight -- over a year and a half after the plaintiff was --

6  his case was dismissed.

7    THE COURT: You want to show that to the jury, right,

8  show these guys smiling and getting their medals, how dare

9  they.

10    MR. KLEIN: Well, they're claiming that they got the

11  guy that shot at them and it's been proven conclusively that

12  they didn't and there was collusion here and that's at the

13  essence of this case is that they're continuing to celebrate

14  and take credit -- there's no question they were victims of a

15  horrific nightmare but to portray Shane Rhooms as that person

16  is what this case is about.

17    THE COURT: Did they make statements at the medal

18  day?

19    MS. JOYCE: Absolutely not, Your Honor.  No officer -

20  - the officers who received medals do not make speeches at

21  medal day and I've been told that their families, their wives,

22  husbands, children are going to be all over these videos and

23  any photographs of medal day.  It's completely irrelevant.

24  Mr. Klein has provided --

25    THE COURT: Did anyone make any statements at medal

43

1  day

2            MR. KLEIN: Yes.

3            MS. JOYCE: I'm sure someone spoke at medal day.

4            MR. KLEIN: They say that either the deputy

5  commissioner or the commissioner, someone makes comments,

6  gives a speech about why they're getting medals and what they

7  did to --

8            THE COURT: Why don't you just get a transcript?

9            MS. JOYCE: Mr. Klein has all of that paperwork

10 regrading getting them -- being put in for and getting the

11 medal day and combat cross.  I've asked if there was a

12 transcript.  I'm not sure if there's a transcript yet.

13            THE COURT: Well, you have a video; right?

14            MS. JOYCE: I do not have --

15            THE COURT: Someone's got a video.

16            MS. JOYCE: Someone hopefully, yes, has a video.

17            THE COURT: So it will be easy to make a transcript.

18 And you want to know if at that medal day they said yeah, that

19 dirty bastard Shane Rhooms, we got him and he spent 17 days in

20 jail even though he was released later.  You want to know

21 that?

22            MR. KLEIN: Well, knowing that he was cleared in the

23 video that they all saw and continue to say that --

24            MS. JOYCE: They did not see the video.

25            THE COURT: Why don't you -- have you seen -- you

44

1   haven't seen the video?

2          MS. JOYCE: No.  He said --

3          THE COURT: No, no.  You have not seen the video?

4          MS. JOYCE: The medal day video, no.

5          THE COURT: Simple matter.  Get your hands on the

6   medal day video.  What's it going to be, five minutes long?

7          MS. JOYCE: I have absolutely no idea.

8          THE COURT: Ten minutes.  It can't be very long.

9          MS. JOYCE: Well, it's not just three people getting

10  medals.  It's anyone who's getting a medal gets a medal on

11  that one day.

12         THE COURT: Get the medal day video.  See if anything

13  was said.  If nothing was said let Mr. Klein know that.  If

14  something was said get a transcript.  I'll -- you have the

15  underlying documents.

16         I hate to ask it.  What else?

17         MS. JOYCE: Surprisingly nothing, Your Honor.

18         THE COURT: Discuss settlement or is this still a no

19  pay case?

20         MR. KLEIN: No.

21         MS. JOYCE: Your Honor, I offered over $100,000.

22  They --

23         THE COURT: Let's go off the record.

24         MS. JOYCE: They would not take it.

25  (Proceedings concluded at 11:28 a.m.)

45

* * * * *

I certify that the foregoing is a court transcript from an electronic sound recording of the proceedings in the above-entitled matter.

_____

Shari Riemer, CET-805

Dated:  March 2, 2015