UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

SHANE RHOOMS,

                                              Plaintiff,

-against-

CITY OF NEW YORK, ROBERT ORTLIEB, Individually,
ROBERT HENDERSON, Individually, JOSEPH SEMINARA,
Individually, DEVON FREED, Individually, and JOHN DOE 1,
Individually, (the name John Doe being fictitious, as the true
name is presently unknown),

                                            Defendants.

----------------------------------------------------------------------X

**SECOND CONSOLIDATED AMENDED COMPLAINT**

11 CV 5910
(PKC) (RER)

13 CV 5006
(PKC) (RER)

Jury Trial Demanded

       Plaintiff SHANE RHOOMS, by his attorneys, Brett H. Klein, Esq., PLLC, complaining of the defendants, respectfully alleges as follows:

### Preliminary Statement

       1.    Plaintiff bring this action for compensatory damages, punitive damages and attorneys' fees pursuant to 42 U.S.C. §§ 1981, 1983 and 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitution of the United States and the laws of the State of New York.

### JURISDICTION

       2.    This action is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

       3.    Jurisdiction is found upon 28 U.S.C. §§1331, 1343 and 1367.

## VENUE

4.      Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38 (b).

## PARTIES

6.      Plaintiff SHANE RHOOMS is a twenty-seven year old man of Jamaican descent who resides in Brooklyn, New York.

7.      Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant CITY OF NEW YORK maintains the New York City Police Department (hereinafter referred to as "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, CITY OF NEW YORK.

9.      That at all times hereinafter mentioned, the individually named defendants ROBERT ORTLIEB, ROBERT HENDERSON, JOSEPH SEMINARA, DEVON FREED, and JOHN DOE 1, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10.     That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

11. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant CITY OF NEW YORK.

## FACTS

12. On September 6, Labor Day weekend 2010, at approximately 12:00 a.m., plaintiff Shane Rhooms, together with his cousin, Alhue Gale and some friends, arrived at Webster Hall, a Manhattan night club, located at 125 East 11th Street, New York, New York.

13. Rhooms was continuously present in Webster Hall until approximately 5:00 a.m.

14. Rhooms was present in Webster Hall in Manhattan when, at approximately 12:40 a.m., defendants NYPD Sergeant Seminara, and Lieutenants Henderson and Ortlieb, allegedly engaged in a foot pursuit of an unknown individual from the front of 222 Lenox Road, in Brooklyn, New York, to the rear of the building.

15. Prior to this foot pursuit, the unknown individual, purportedly a male black, was among other young men standing in front of 222 Lenox Road.

16. As Seminara, Henderson and Ortlieb were driving up Lenox Road in a police vehicle towards the group, the unknown individual turned and ran, never looking back.

17. The unknown individual purportedly fired several gunshots at defendants Seminara, Henderson, and Ortlieb while he was running. The officers returned fire, but the perpetrator escaped inside 222 Lenox Road.

18. There was at most mere seconds to view the individual while he was standing with the others on the dimly lit Lenox Road location before he turned, ran and fired at the officers with his back to them as he ran down the alleyway and into 222 Lenox Road.

19. Defendants Seminara, Henderson, and Ortlieb did not have any realistic

opportunity to view the facial features of the individual who had fired at them in the mere seconds before he turned, ran and fired without looking back at them.

20. The gunman escaped inside of 222 Lenox Road, and was not apprehended.

21. An intensive investigation ensued for the identification, location and arrest of the alleged gunman. Within minutes, dozens or more police units responded to look for the shooter.

22. During the critical minutes after the incident when a detailed description was requested by responding police units, defendants Seminara, Ortlieb and Henderson were unable to provide any information whatsoever, including height, weight, facial features, clothing, hair style, or any other distinct features that would have assisted the investigation, other than that the purported suspect was a "male black".

23. Defendant NYPD Detective Devon Freed was assigned to lead the investigation within an hour of the shooting.

24. In the initial hours after the incident, witnesses were detained for the purpose of being questioned by detectives. Trevor Perez, an individual not involved in the aforementioned shooting, but who was present at 222 Lenox Road when the incident occurred on September 6, 2010, was one such person who was illegally detained by NYPD officers at approximately 1:00 a.m., even though there was no cause for him to be detained against his will.

25. Trevor Perez was handcuffed, imprisoned, and transported against his will to the 67th precinct, where he was not free to leave.

26. After arriving at the 67th precinct, Trevor Perez was taken to an interrogation room utilized by Detective Freed and other members of the 67th Detective Squad.

27. Defendant Freed and John Doe 1, an as yet unidentified NYPD detective, began interrogating Trevor Perez inside the interrogation room.

28. During the interrogation, Trevor Perez was spoken to in a loud and aggressive tone, and he was touched in a threatening and intimidating manner about his shoulders. He was denied food and water. He was also told, in sum and substance, you got to give someone up, someone that you know.

29. During the investigation, one of the other witnesses taken to the 67 precinct purportedly said he was with someone named "Shane" earlier in the evening. Apparently based on this first name, a search was conducted of mug shots in an NYPD database even though this "Shane" was not implicated in the shooting, resulting in Detective Freed obtaining a picture of Shane Rhooms, whose mug shot was in the system from a sealed arrest from July 2010 for alleged unlawful possession of fireworks.

30. As Detective Freed and John Doe 1 continued the Trevor Perez interrogation, the mugshot photograph of plaintiff Shane Rhooms was placed in front of Perez, and he was told, in sum and substance, you are going to sign this and say this is the guy who did the shooting.

31. Trevor Perez knew Shane Rhooms, and he further knew that Rhooms was not present at 222 Lenox Road when the shooting occurred.

32. Trevor Perez told defendant Freed and John Doe 1 numerous times that Rhooms was not the person who was involved in the shooting.

33. Notwithstanding his protestations, Trevor Perez was told that he would be free to leave only after he signed the photograph of Rhooms.

34. Trevor Perez felt threatened and was crying.

35. Under duress, Trevor Perez eventually wrote the words that were dictated to him by the defendant detectives: "this is the guy that I saw running from the cops with the gun dressed in all black" on the photograph of Shane Rhooms, and signed his name under the words

5

that he had written.

36.  Trevor Perez was thereafter allowed to leave the precinct.

37.  After Trevor Perez was coerced into falsely implicating Rhooms, defendant Freed immediately prepared a photographic array with a photograph of Rhooms, and he also had a "wanted poster" prepared that also contained a photograph of Rhooms prominently displayed.

38.  At approximately 5 a.m., Freed showed the photo array to defendant Seminara, who falsely identified Rhooms as the perpetrator of the shooting during a sham photo identification procedure that was conducted by defendant Freed based on the coerced, false, and otherwise manufactured evidence obtained from Trevor Perez. Seminara could not have viewed the shooter at the scene sufficiently to make an identification, and was unable to describe him after the shooting. Freed and Seminara colluded to have Seminara identify Rhooms given the illegality involved in procuring Trevor Perez's identification, and the likelihood that Trevor Perez would report to prosecutors that he was coerced into falsely implicating Rhooms if they had access to him.

39.  Defendant Freed circulated the wanted poster throughout the 67th police precinct facility on September 6, 2010.

40.  Defendant Henderson, who was in the 67 precinct station house on September 6, 2010, viewed the "wanted poster," tainting his subsequent identification of plaintiff.

41.  Defendants Ortlieb and Seminara were also present inside the 67 precinct on September 6, 2010, and likewise had access to the wanted poster prior to their later viewing of Rhooms in a lineup procedure.

42.  On September 6, 2010 at approximately 4:15 p.m., Rhooms and his cousin, Alhue Gale, voluntarily went to the 67th precinct stationhouse. Once at the stationhouse, Rhooms was

falsely imprisoned in an interrogation room, where defendant Freed questioned him for an extended period of time.

43. During the interrogation, Rhooms was accused by defendant Freed of involvement in the Lenox Road shooting that occurred when he was at Webster Hall in Manhattan.

44. Upon hearing the accusation, Rhooms repeatedly informed the defendant Freed that he was not in Brooklyn on September 6, 2010 at approximately 12:40 a.m., and that he was in fact at Webster Hall, a Manhattan night club, with his cousin, Alhue Gale, as well as a number of other friends.

45. Rhooms informed defendant Freed that Alhue Gale had accompanied him to the precinct and would cooperate with their investigation.

46. Rhooms informed defendant Freed that there were numerous other witnesses who could verify his presence at Webster Hall at the time of the shooting.

47. Rhooms also provided his metro card and detailed travel route to and from Webster Hall to Detective Freed.

48. By the time of plaintiff's arrest, defendant Freed had also obtained plaintiff's cell phone records, which confirmed that plaintiff was making a call near or at Webster Hall in Manhattan at the time of the incident and, together with the other indicia of plaintiff's innocence, would have led a reasonable law enforcement officer to conclude that probable cause was lacking for plaintiff's arrest.

49. Defendant Freed did not investigate Rhooms' compelling and readily verifiable alibi, but instead held him in custody to be identified in a sham lineup later that evening, and so that he could convey the fabricated charges that Rhooms was involved in the shooting to the

KCDAO for prosecution, even though he knew that Rhooms had nothing to do with the shooting.

50. On September 7, 2010, at approximately 12:45 a.m., approximately 24 hours after they saw the alleged shooter in the dark from a distance from inside their police vehicle, for at best seconds, and when he was in close proximity to other males before he turned and fired shots at them, defendants Ortlieb, Henderson, and Seminara, in furtherance of the conspiracy of all of the defendant officers to falsely identify Rhooms, maliciously identified Rhooms as the individual who fired gunshots at them on September 6, 2010. Rhooms was forced to stand in sham lineups that were orchestrated by defendant Freed which were held essentially at the same time. Plaintiff was seated in position 3 for each of the viewings which took place within minutes of each other. Detective Freed fabricated that plaintiff was permitted to select his position in the lineups, when in fact he was given no such opportunity.

51. As a result of the defendants' wrongful conduct, Mr. Rhooms was imprisoned by the defendants until he was arraigned on false charges filed in Brooklyn Criminal Court under Docket No. 2010KN071284, based on the false statements and manufactured false evidence of the defendant officers, which were conveyed to the Kings County District Attorney's Office ("KCDAO") to be used in criminal proceedings filed against plaintiff.

52. The defendants initiated said prosecution with malice.

53. Defendants Seminara, Ortlieb and Henderson withheld the true facts surrounding their inability to observe the shooter, Detective Freed withheld the coercion of Trevor Perez that resulted in fabrication of evidence, and the defendants withheld and/or misrepresented the circumstances of the tainted and otherwise sham identification procedures that led to the manufacture of false evidence against plaintiff.

54. Defendant Freed also withheld the identity of Trevor Perez by informing the

Assistant District Attorney assigned to prosecute Rhooms that a "confidential informant" who wished to remain anonymous had initially identified Rhooms as the individual who had fired gunshots at defendants Ortlieb, Henderson, and Seminara. Trevor Perez was not, in fact, a "confidential informant".

55. Defendant Freed also failed to prepare a written report, commonly referred to as a "DD5", memorializing the alleged interview and identification of Rhooms by Trevor Perez, even though such reports were prepared for every other witness that was interviewed by detectives in connection with the investigation.

56. Defendant Freed further never disclosed the coerced written statement by Trevor Perez implicating Shane Rhooms to the KCDAO, notwithstanding his professional and/or ethical and/or other obligations to do so.

57. The malicious prosecution caused Rhooms to be indicted and imprisoned on Riker's Island for Attempted Murder of three police officers, to wit: defendants Seminara, Ortlieb and Henderson. He faced 75 years to life in prison if convicted.

58. While incarcerated, Rhooms was subjected to deplorable and otherwise unsanitary conditions, and subjected to humiliating strip searches in the presence of other prisoners, and suffered mental anguish.

59. During this time, plaintiff was emotionally traumatized by the apparent inevitability of his spending the rest of his life in prison for something that he did not do.

60. On approximately September 24, 2010, Rhooms was released on his own recognizance after his criminal defense attorney presented the clear evidence of his innocence to the Kings County District Attorney's Office. Said evidence included readily available video surveillance footage from Webster Hall confirming that Rhooms was in fact at Webster Hall on

September 6, 2010 at the time of the shooting, as well as cell phone records that placed plaintiff in Manhattan at the time of the shooting.

61. Detective Freed had the cell phone records at the time of plaintiff's arrest, and could have obtained the video prior to referring the extremely serious charges to the KCDAO for prosecution. Notwithstanding, upon information and belief, Freed obtained the video on or around September 8, 2010, yet the prosecution, and plaintiff's incarceration and nightmare of facing 75 years to life in prison were allowed to continue.

62. After reviewing the evidence that confirmed that Rhooms was at Webster Hall at the time of the shooting, the Assistant District Attorney assigned to prosecute Rhooms asked defendant Freed on at least two occasions to produce the "confidential informant" --Trevor Perez -- who had initially identified Rhooms as the shooter.

63. Defendant Freed did not comply with the request of the KCDAO, stalling the KCDAO's dismissal of the indictment. Because Freed withheld the coerced signed statement by Perez from the KCDAO and did not otherwise document the interview in a DD5, Perez's name and contact information were unknown to the KCDAO, which remained unable to independently reach out to Perez to verify his story in the face of plaintiff's clear innocence.

64. Rhooms was compelled to return to criminal court on further occasions until December 21, 2010, when all of the false charges levied against him were dismissed and sealed on the motion of the KCDAO.

65. Notwithstanding plaintiff's undisputable complete exoneration, the NYPD and defendants Ortlieb, Seminara and Henderson have continued to assert that plaintiff was the shooter at 222 Lenox, resulting in irreparable damage to plaintiff's reputation and mental anguish.

66. As a result of the defendants' brazen falsification and misconduct, Rhooms suffered loss of liberty, loss of enjoyment of life, and significant mental anguish, which is likely to affect him for the rest of his life.

### Federal Claims

### AS AND FOR A FIRST CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983 Against Defendants Ortlieb, Henderson, Seminara and Freed)

67. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "66" with the same force and effect as if fully set forth herein.

68. Defendants arrested plaintiff SHANE RHOOMS without probable cause, causing him to be detained against his will for an extended period of time and subjected to physical restraints.

69. Defendants caused plaintiff SHANE RHOOMS to be falsely arrested and unlawfully imprisoned.

70. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

71. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

72. As a result of the foregoing, plaintiff SHANE RHOOMS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable

attorneys' fees, costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
(Malicious Prosecution under 42 U.S.C. § 1983 Against Defendants Ortlieb, Henderson, Seminara and Freed)

73. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "72" with the same force and effect as if fully set forth herein.

74. Defendants initiated, commenced and continued a malicious prosecution against plaintiff SHANE RHOOMS.

75. Defendants caused plaintiff SHANE RHOOMS to be prosecuted without any probable cause until the charges were dismissed on or about December 21, 2010. As a result of the foregoing, plaintiff SHANE RHOOMS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
(Denial of Constitutional Right to Fair Trial Under 42 U.S.C. § 1983 Due to Fabrication of Evidence Against Defendants Ortlieb, Henderson, Seminara and Freed)

76. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "75" with the same force and effect as if fully set forth herein.

77. Despite defendants knowing that Seminara, Ortlieb and Henderson were not able to implicate plaintiff in any crime, all of the defendants created false evidence that was conveyed to the KCDAO. By Seminara, Ortlieb and Henderson colluding to falsely identify plaintiff as the shooter, and via Detective Freed and John Doe 1's direct involvement in coercing, pressuring and intimidating Trevor Perez into creating false evidence, the defendants violated plaintiff's right to a fair trial and to be free from fabrication of evidence under the Due Process Clause.

78. As a result of the foregoing, plaintiff SHANE RHOOMS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Failure to Intervene under 42 U.S.C. § 1983 Against Defendants Ortlieb, Henderson, Seminara and Freed)

79. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "78" with the same force and effect as if fully set forth herein.

80. Defendants had an affirmative duty to intervene on behalf of plaintiff SHANE RHOOMS, whose constitutional rights were being violated in their presence by other officers.

81. The defendants failed to intervene to prevent the unlawful conduct described herein.

82. As a result of the foregoing, plaintiff SHANE RHOOMS' liberty was restricted for an extended period of time, he was put in fear of his safety, and he was humiliated and subjected to handcuffing and other physical restraints.

83. As a result of the foregoing, plaintiff SHANE RHOOMS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### Supplemental State Law Claims

84. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "83" with the same force and effect as if fully set forth herein.

85. Within ninety (90) days after the claim herein accrued, plaintiff duly served upon,

presented to and filed with the CITY OF NEW YORK, a Notice of Claim setting forth all facts and information required under the General Municipal Law 50-e.

86. The CITY OF NEW YORK has wholly neglected or refused to make an adjustment or payment thereof and more than thirty (30) days have elapsed since the presentation of such claim as aforesaid.

87. This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

88. This action falls within one or more of the exceptions as outlined in C.P.L.R. 1602.

### AS AND FOR A FIFTH CAUSE OF ACTION
(False Arrest under the laws of the State of New York Against All Defendants)

89. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "88" with the same force and effect as if fully set forth herein.

90. Defendants arrested plaintiff SHANE RHOOMS without probable cause.

91. Plaintiff was detained against his will for an extended period of time and subjected to physical restraints.

92. As a result of the aforementioned conduct, plaintiff SHANE RHOOMS was unlawfully imprisoned in violation of the laws of the State of New York.

93. As a result of the aforementioned conduct, plaintiff SHANE RHOOMS suffered loss of liberty and mental anguish.

94. As a result of the foregoing, plaintiff SHANE RHOOMS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable

attorneys' fees, costs and disbursements of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Battery under the laws of the State of New York Against All Defendants)

95. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "94" with the same force and effect as if fully set forth herein.

96. Defendants made or otherwise caused offensive physical contact to plaintiff SHANE RHOOMS by causing him to be handcuffed and otherwise subjected to physical restraint without privilege or consent.

97. As a result of defendants' conduct, plaintiff SHANE RHOOMS has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

98. As a result of the foregoing, plaintiff SHANE RHOOMS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Malicious Prosecution under the laws of the State of New York Against All Defendants)

99. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "98" with the same force and effect as if fully set forth herein.

100. Defendants initiated, commenced and continued a malicious prosecution against plaintiff SHANE RHOOMS.

101. Defendants caused plaintiff SHANE RHOOMS to be prosecuted without probable cause until the charges were dismissed on or about December 21, 2010.

102. As a result of the foregoing, plaintiff SHANE RHOOMS is entitled to

compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
(*Respondeat Superior* liability under the laws of the State of New York Against Defendant City of New York)

103. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "102" with the same force and effect as if fully set forth herein.

104. Defendant CITY OF NEW YORK is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

105. As a result of the foregoing, plaintiff SHANE RHOOMS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**WHEREFORE**, plaintiff SHANE RHOOMS demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A)     full and fair compensatory damages in an amount to be determined by a jury;

(B)     punitive damages against the individually named defendants in an amount to be determined by a jury;

(C)     reasonable attorneys' fees and the costs and disbursements of this action; and

(D)     such other and further relief as appears just and proper.

Dated: Brooklyn, New York
        July 21, 2015

                                   BRETT H. KLEIN, ESQ., PLLC
                                   Attorneys for Plaintiff SHANE RHOOMS
                                   305 Broadway, Suite 600
                                   New York, New York 10007
                                   (212) 335-0132

                By:      _/s/ Brett H. Klein_
                                      BRETT H. KLEIN (BK4744)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

SHANE RHOOMS,

                                    Plaintiff,

                11 CV 5910
                (PKC) (RER)

      -against-

                13 CV 5006
CITY OF NEW YORK, ROBERT ORTLIEB, Individually,    (PKC) (RER)
ROBERT HENDERSON, Individually, JOSEPH SEMINARA,
Individually, DEVON FREED, Individually, and JOHN DOE 1,
Individually, (the name John Doe being fictitious, as the true
name is presently unknown),

                                Defendants.

------------------------------------------------------------------------X

**SECOND CONSOLIDATED AMENDED COMPLAINT**

**BRETT H. KLEIN, ESQ., PLLC**
Attorneys for the Plaintiff
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132