UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

SHANE RHOOMS,

                                               Plaintiff,                        11 CV 5910

             -against-                                       (PKC) (RER)

CITY OF NEW YORK, ROBERT ORTLIEB, Individually,
ROBERT HENDERSON, Individually, JOSEPH SEMINARA,
Individually, DEVON FREED, Individually, and JOHN DOE 1,
Individually, (the name John Doe being fictitious, as the true
name is presently unknown),

                                    Defendants.

--------------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

                                         BRETT H. KLEIN, ESQ., PLLC
                                         *Attorneys for the Plaintiff*
                                         305 Broadway, Suite 600
                                         New York, New York 10007
                                         (212) 335-0132

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................................................ii

PRELIMINARY STATEMENT.............................................................................................1

STATEMENT OF FACTS.......................................................................................................1

STANDARD OF REVIEW…………………………………………………………………...7

ARGUMENT…………………………………………………………………………….7

    I.    False Arrest Should Proceed to Trial……………………………..………………..7

        A.  Plaintiff was arrested without probable cause………………………………7

        B.  All of the defendant officers were personally involved in plaintiff's false arrest.…………………………………………………………………………13

    II.    Malicious Prosecution Should Proceed to Trial ………………………………..…13

        A.  The defendant officers initiated a criminal prosecution against plaintiff ……….14

        B.  Probable cause was lacking …………………………………………………...16

        C.  Defendants Freed, Seminara, Ortlieb, and Henderson acted with malice ……....18

    III.    Right to Fair Trial Should Proceed to Trial………..………………………………...19

    IV.    Failure to Intervene is Withdrawn ……………..…………………………………21

    V.    Qualified Immunity Should be Denied …….………………………….....................21

    VI.    Claims against John Doe I…………….………………………..……………..22

    VII.    Plaintiff's State Law Claims…………………………………………………22

        A.  Defendant City of New York is liable via the theory of *respondeat superior*…...23

        B.  The individual defendants are not entitled to governmental immunity………..….23

        C.  Plaintiff has established a question of fact as to his battery claim………………25

        D.  Supplemental jurisdiction should be exercised over plaintiff's state law claims…25

CONCLUSION.......................................................................................................26

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. City of New York*, 817 F.Supp.2d 77 (E.D.N.Y. 2011) ............................................. 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 7

*Arteaga v. State*, 532 N.Y.S.2d 57 (1988) ................................................................................... 24

*Blake v. Race*, 487 F. Supp. 2d 187, 207 (E.D.N.Y. 2007) ......................................................... 8

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003) ............................................................... 18

*Bradley v. City of New York*, 04 CV 8411 (RWS) (MHD), 2007 WL 232945 (S.D.N.Y. Jan. 26,

    2007) .................................................................................................................................... 24

*Brady v. Maryland*, 373 U.S. 83 (1963) ..................................................................................... 20

*Brewton v. City of New York*, 550 F. Supp. 2d 355 (E.D.N.Y. 2008) ........................................... 8

*Brown v. City of New York*, 08 CV 5095 (FB) (MDG), 2013 WL 1338785 (E.D.N.Y. April 1,

    2013) ............................................................................................................................... 19, 20

*Budgar v. State of New York*, 414 N.Y.S.2d 463 (1979) ............................................................. 25

*Cameron v. City of New York*, 598 F.3d 50 (2d Cir. 2010) ......................................................... 14

*Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153 (E.D.N.Y. 2010) ............................................... 25

*Clark v. City of New York*, 09 CV 2533 (PKC), 2015 WL 5719612 (E.D.N.Y. Sept. 29, 2015) .. 9,

    12

*Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003); ....................................................... 21, 22

*Davis v. City of New York*, 373 F.Supp.2d 322 (S.D.N.Y.2005) ................................................. 24

*Dowling v. City of New York,* 11 CV 4954 (NGG)(RML), 2013 WL 5502867 (E.D.N.Y. Sept. 30,

    2013) .................................................................................................................................... 19

*Espada v. Schneider,* 522 F.Supp.2d 544 (S.D.N.Y. 2007) ........................................................ 14

*Garnett v. City of New York*, 13 CV 7083 (GHW), 2014 WL 3950904 (S.D.N.Y. Aug. 13, 2014)

.................................................................................................................................. 19

*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991) ......................................................... 21

*Green v. City of New York*, 465 F.3d 65 (2d. Cir. 2006) ............................................................. 22

*Jackson v. City of New York*, 939 F. Supp. 2d 235 (E.D.N.Y. 2013) ........................................... 23

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ...................................................... 21, 22

*Johnson v. Suffolk County Police Dep't*, 665 N.Y.S.2d 440 (2d Dep't 1997) .............................. 25

*Llerando–Phipps v. City of New York,* 390 F.Supp.2d 372 (S.D.N.Y. 2005) ............................... 14

*Maldonado v. City of New York,* 11 CV 3514, 2014 WL 787814 (S.D.N.Y. Feb. 26, 2014). 19, 20

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) ............................................. 16, 17

*Maryland v. Macon*, 472 U.S. 463 (1985) .................................................................................... 8

*McCaffrey v. City of New York*, 11 CV 1636 (RJS), 2013 WL 494025 (S.D.N.Y. Feb. 7, 2013)

.............................................................................................................................................. .20, 21

*Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564 (S.D.N.Y. 2002) .................................................... 25

*Mickle v. Morin*, 297 F.3d 114 (2d Cir. 2002) ............................................................................ 22

*Moore v. Comesanas*, 32 F.3d 670 (2d Cir. 1994) ....................................................................... 8

*Parisi v. Suffolk Cnty.,* 04 CV 2187, 2009 WL 4405488 (E.D.N.Y. Nov. 30, 2009) .................... 9

*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001) ......................................................... 13

*Rehberg v. Paulk*, 132 S. Ct. 1497 (2012) ................................................................................... 19

*Rentas v. Ruffin*, 14 CV 2475, 2016 WL 877828 (2d Cir. Mar. 8, 2016) ......................... 14, 15, 18

*Ricciuti v. New York City Transit Auth.,* 124 F.3d 123 (2d Cir. 1997) ............................. 14, 18, 19

*Richards v. City of New York*, 97 CV 7990 (MBM), 2003 WL 21036365 (S.D.N.Y. May 7, 2003)

.............................................................................................................................................. 16, 18

iii

*Rodriguez v. City of New York*, 189 A.D.2d 166 (1st Dept. 1993) ................................................ 24

*Rodriguez v. City of New York*, 72 F.3d 1051 (2d Cir. 1995) ........................................................ 7

*Rosen v. City of New York*, 667 F. Supp. 2d 355 (S.D.N.Y. 2009) ............................................... 24

*Sanders v. City of New York*, 12 CV 113 (PKC) (LB), 2015 WL 1469514 (E.D.N.Y. Jan. 7, 2015) ................................................................................................................ passim

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003) ............................................................ 16

*Struthers v. City of New York*, 12 CV 0242 (JG), 2013 WL 2390721 (E.D.N.Y. May 31, 2013) 19

*Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ................................................................................ 10

*Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999) .......................................................................... 22

*Watkins v. Doe*, 04 CV 0138 (PKC), 2006 WL 648022 (S.D.N.Y. Mar. 14, 2006) ................... 22

*Weiss v. Fote*, 7 N.Y.2d 579 (1960) ............................................................................................. 24

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) ........................................................................ 8, 23

*Wong v. Yoo*, 649 F. Supp. 2d 34 (E.D.N.Y. 2009) ........................................................ 13, 14, 15

*Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007) .................................................................... 21

## PRELIMINARY STATEMENT

On September 6, 2010, plaintiff Shane Rhooms, who was then twenty-two years old, was falsely accused of, arrested, and prosecuted for purportedly shooting at and attempting to murder three defendant NYPD officers, Sergeant Joseph Seminara, Lieutenant Robert Henderson, and Lieutenant Robert Ortlieb.  Plaintiff was and is undisputedly factually innocent of these charges and was exonerated via readily available exculpatory evidence, including surveillance footage, which confirmed that plaintiff was present at Webster Hall, a Manhattan night club, at the time of the purported police shooting that occurred in Brooklyn.  Plaintiff brings federal and state law claims for false arrest, malicious prosecution, denial of his right to fair trial, failure to intervene, and battery, against defendants Seminara, Henderson, Ortlieb and Detective Devon Freed, arising from the aforesaid events.  Plaintiff has set forth evidence based on which a reasonable jury could find that defendants colluded in their efforts to falsely arrest and prosecute him for a crime they knew he did not commit, and for which there was ample exculpatory evidence proving his innocence at the time of his arrest.  Despite the Court's admonition at a pre-motion conference that this motion would likely be futile, defendants have moved for summary judgment on all claims. Defendants' motion for summary judgment should be denied.

## STATEMENT OF FACTS[1]

On September 5, 2010, a few hours before midnight, plaintiff travelled by public transportation from Brooklyn to his cousin Alhue Gayle's home in Queens.  PCS ¶ 1.  From there, he traveled by car with his cousin and friends to Webster Hall, a nightclub, arriving there sometime

---

[1] For a complete statement of the facts which remain to be tried and which support plaintiff's claims that there are numerous genuine issues of material fact which preclude summary judgment in this matter, the Court is respectfully referred to plaintiff's Response to Defendants' Local Rule 56.1 Statement and to Plaintiff's Counter Statement of Disputed Material Facts for Trial (hereinafter referred to as "PCS").  A summary of said genuine issues of fact is set forth here.

around 12:00 a.m. on September 6, 2010.  PCS ¶ 1.  Plaintiff remained at Webster Hall until approximately 5:00 a.m., on September 6.  PCS ¶ 2.  While plaintiff was at Webster Hall, at approximately 12:40 a.m., defendants Seminara, Henderson and Ortlieb claim they pursued a fleeing black, male, in dark clothes, with whom they purportedly exchanged gunfire.  PCS ¶¶ 3-35.  They further claim the male escaped into 222 Lenox Road, in Brooklyn.  PCS ¶ 30.

Although defendants Seminara, Henderson and Ortlieb claimed that they were able to see the purported shooter's face and later purportedly identified plaintiff as the shooter, their claims are disputed insofar as the record reflects that defendants Seminara, Henderson and Ortlieb had at most a few seconds to observe the individual's face before he ran, and that the area where the group was standing was dark and not well lit.  PCS ¶¶ 7, 9, 15, 16, 21-25.  Further, immediately after the purported shooting, the best description the defendant officers could provide in furtherance of the manhunt for the shooter was a male, black, wearing dark clothing.  PCS ¶¶ 40-42.  Finally, it is without dispute that plaintiff was not the shooter insofar as, among other evidence, plaintiff has been exonerated via surveillance footage, which confirms that plaintiff was present at Webster Hall at the time of the purported shooting.  *See* PCS ¶¶ 1-3, 106-110.

As for the purported shooting, not only do the facts viewed in a light most favorable to plaintiff set forth claims from which a jury could credit plaintiff's innocence, the officers' testimony that they were fired upon six times, in an enclosed alleyway with bullets hitting the walls around them, is in any event not supported by the record.  *See* PCS ¶¶ 27-28, 31, 35-37.  In that regard, although an examination of Seminara, Henderson and Ortlieb's weapons revealed that they had collectively fired nineteen shots, allegedly in response to being fired upon at least six times in the enclosed alleyway, a thorough search of the scene immediately after the shooting on September 6, 2010 revealed only eighteen shell casings and eighteen bullet fragments.  PCS ¶ 37.  While a

nineteenth shell casing was purportedly discovered pursuant to a second search conducted on September 6, 2010, at approximately 2:45 p.m., the evidence suggests this shell casing was planted after the fact, insofar as the shell casing is not present in photographs taken during the first search for evidence, which appear to depict the same area where the nineteenth shell casing was purportedly recovered during the second search.  PCS ¶ 38-39.  Plaintiff submits that these facts support an inference that defendants Seminara, Henderson, and Ortlieb improperly discharged their weapons at a fleeing suspect and that their claims that they were fired upon first were fabricated to justify their weapons discharge.  Furthermore, within an hour of the purported shooting, defendant First Grade Detective Devon Freed was assigned the task of investigating the incident.  PCS ¶ 44.  Based on the facts that follow, there is ample evidence in the record that Freed was aware that Seminara, Henderson, and Ortlieb's weapons discharge was improper and that he colluded with them to help cover-up their misconduct through, among other acts, the coercion of a witness by Freed, leading to the false arrest of the plaintiff.

As an initial matter, defendants Seminara, Henderson, and Ortlieb were also actively part of the investigation to find the purported shooter.  PCS ¶ 43.  Second, as the lead investigator, Freed immediately went to 222 Lenox Road to assess the shooting scene.  PCS ¶ 45.  Freed also had access to the crime scene unit documents which call into question defendants Seminara, Henderson and Ortlieb's claims with respect to the circumstances of the shooting.  PCS ¶ 45.  Freed's involvement in aiding in the cover-up of the shooting is further evidenced by his coercion of an individual named Trevor Perez, who is the only civilian witness who allegedly linked plaintiff to the purported shooting, and without whose coerced identification by Freed, Freed would have had no basis to prepare and conduct the photo array and lineup identification procedures involving

3

Seminara, Henderson and Ortlieb, which ultimately led to the false arrest of and criminal proceedings against plaintiff.  PCS ¶¶ 46-57, 61, 82.

Perez testified under oath that after he was brought to the 67th Precinct in handcuffs, he was imprisoned in a room and interrogated in a loud, threatening, and aggressive manner, and forced into falsely implicating plaintiff in the shooting.  PCS ¶¶ 48-55.  Perez further testified that during the interrogation, he was shown a photo of Shane Rhooms, and was told that this is the person he was going to give up.  PCS ¶ 50.  In response to being shown the photo, Perez affirmatively told the interrogating detectives, one of whom was Freed by Freed's own admission, that he knew who plaintiff was, that he had not seen plaintiff anywhere near the shooting, and that plaintiff was not the guy they were looking for.  PCS ¶ 51.  Perez was nonetheless told that he would only be allowed to leave if he wrote the following words: "this is the guy that I saw running from the cops with the gun dress in all black," which were dictated to him and then signed the photograph of Shane Rhooms.  PCS ¶ 53; Klein Decl. Ex. 22.  In order to gain his release, after being held for hours, Perez complied with the detectives' orders.  PCS ¶¶ 52-54.  Perez did not, however, actually observe any civilian shooter.  PCS ¶ 56.  In fact, Perez testified that he was about to enter a corner store nearby when he first heard shots fired and never saw any civilian firing at the police.  PCS ¶ 56.  It is further undisputed that Freed was present and personally involved in Perez's detention and interrogation at the 67th Precinct.  PCS ¶ 47.

Notably, within ten minutes of Perez's coerced identification, Freed had Detective Gregory Barrett prepare the photo array, which was shortly thereafter shown to Seminara only.  PCS ¶¶ 60, 62.  Seminara purportedly picked plaintiff's photo out of the array.  PCS ¶ 65.  However, based on the chain of events described above, a jury could find that Seminara did not have a sufficient opportunity to see the face of the individual who purportedly shot at him, could not provide a

description of the purported shooter immediately after the incident, and could therefore reasonably infer that the photo array was fraudulently conducted and that Freed colluded with Seminara to ensure he picked plaintiff out of said array.  PCS ¶ 65.  The fraudulent photo array further led to Freed creating and disseminating a wanted poster with a photograph of plaintiff displayed on it, which was then improperly made available to defendants Seminara, Henderson and Ortlieb prior to their lineup identifications conducted on September 7, 2010, and which consequently tainted the lineups .  PCS ¶¶ 66-70.  The lineups were further tainted by the fact that plaintiff was the only individual in the lineup who, like the purported shooter, was wearing dark pants.  PCS ¶ 83.  It can thus be inferred that Seminara, Henderson and Ortlieb picked plaintiff out of the lineups based on seeing his photo, which arose from the coerced false identification by Perez, a fact which is supported by evidence that none of the defendants had a sufficient opportunity to actually see the purported shooter's face during the actual incident.  PCS ¶¶ 83-90.

The defendants' collusion in framing plaintiff is further evidenced by defendant Freed's willful disregard of the ample exculpatory evidence available to him, including plaintiff's specific and detailed alibi statement; corroborating cell phone evidence in the possession of the NYPD *prior* to plaintiff's arrest that showed a series of calls were made from plaintiff's cell phone, originating in Manhattan near Webster Hall, beginning at 12:25 a.m. on September 6, 2010, during the window of time when the shooting purportedly occurred; Alhue Gayle's statements which corroborated plaintiff's alibi; Perez's exculpatory statements to defendant Freed that plaintiff was not involved in the shooting; and by his failure to investigate additional exculpatory evidence available to him, including plaintiff's MetroCard and the exonerating surveillance video from Webster Hall.  PCS ¶¶ 51, 73, 76-81.

Finally, the evidence also supports the inference that Freed attempted to conceal Perez's coerced identification by failing to memorialize his interview of Perez or Perez's identification of plaintiff in a DD5 or complaint follow-up form, which was against proper procedure, and by his withholding of Perez's signed statement, name and contact information from Assistant District Attorney Lew Lieberman (hereinafter "ADA Lieberman"), by falsely informing ADA Lieberman that Perez was a "confidential informant," which he was not, and by withholding access to Trevor Perez even after ADA Lieberman asked defendant Freed on at least two occasions to produce the "CI" to be interviewed by Lieberman.  PCS ¶ 58-60; 101.

As a result of the foregoing fabrications and misconduct, and defendants' Freed, Seminara, Henderson and Ortlieb's conveying of false information to ADA Lieberman and the Kings County District Attorney's Office, plaintiff was formally arrested and arraigned on multiple serious felony charges, and consequently imprisoned at Rikers Island until September 24, 2010.  PCS ¶ 94, 109. Based on the falsified information Lieberman obtained from defendants Freed, Seminara, Ortlieb, and Henderson, ADA Lieberman presented his case against plaintiff to a grand jury.  PCS ¶ 103. During the grand jury presentation, defendants Seminara and Henderson provided false testimony to the grand jury.  PCS ¶¶ 104-105.  Plaintiff was thus indicted on September 10, 2010.  PCS ¶ 103.

After plaintiff's arrest and indictment, plaintiff's cousin, Alhue Gayle, met with ADA Lieberman and defendant Freed at the Kings County District Attorney's Office, and showed ADA Lieberman and Freed the video footage which confirmed that plaintiff was at Webster Hall at the time of the shooting.  PCS ¶ 107.  Around this time, plaintiff was also administered and passed a lie detector test.  PCS ¶ 108.  On September 24, 2010, sometime shortly after viewing the footage, ADA Lieberman had plaintiff's case advanced and consented to plaintiff's release.  PCS ¶ 109.

Despite confirmation of plaintiff's innocence via the video and lie detector test, the felony charges lodged against plaintiff were not dismissed until December 21, 2010.  PCS ¶ 110.

## STANDARD OF REVIEW

Summary judgment should be granted only if the Court determines that there is no genuine dispute as to any material fact concerning the non-movant's claims or defenses and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must examine the facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all factual inferences in favor of the non-moving party.  *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995).  The burden is on the moving party to show that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

### POINT I
### FALSE ARREST SHOULD PROCEED TO TRIAL

**A.  Plaintiff was arrested without probable cause**

Defendants argue that plaintiff's claim for false arrest should be dismissed solely on the grounds that probable cause ostensibly existed to arrest plaintiff based on the false identifications of plaintiff by defendants Seminara, Ortlieb, and Henderson.  *See* Defs.' Mem. of Law, pp. 5-10. Defendants further argue that Seminara, Ortlieb, and Henderson's false identifications provided a sufficient basis to arrest plaintiff despite the fact that plaintiff provided highly credible alibi evidence, and consequently that defendant Freed had no duty to investigate plaintiff's alibi.  *See id.*  Defendants' arguments fail because plaintiff has set forth evidence from which a jury could conclude that Seminara, Ortlieb, and Henderson intentionally and knowingly falsely identified plaintiff to cover-up their improper weapons discharge, or for other collateral objectives, and that

Freed colluded with them to bring about said false identifications, and plaintiff's arrest and prosecution, despite knowledge of exculpatory evidence establishing plaintiff's innocence.

In this case, plaintiff was and is factually innocent, and all inferences must be drawn in his favor.  To prove a claim for false arrest, a plaintiff must show "that the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  The existence of probable is a complete defense to an action for false arrest.  *Id.* "[P]robable cause to arrest exists when the [arresting] officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.*  "Whether probable cause exists 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him.'" *Brewton v. City of New York*, 550 F. Supp. 2d 355, 363 (E.D.N.Y. 2008) (quoting *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985)).  "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute." *See Blake v. Race*, 487 F. Supp. 2d 187, 207 (E.D.N.Y. 2007) (citing *Weyant*, 101 F.3d at 852 (citations omitted)).  "Where an issue of probable cause is 'factual in nature,' it must be presented to a jury." *Blake*, 487 F. Supp. 2d at 207 (citing *Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir.1994)).

Although information received from a putative victim or an eyewitness is generally sufficient to establish probable cause, this is not the case where circumstances raise doubt as to the person's veracity.  *See Sanders v. City of New York*, 12 CV 113 (PKC) (LB), 2015 WL 1469514, at *8 (E.D.N.Y. Jan. 7, 2015) *report and recommendation adopted*, 12 CV 113 (PKC) (LB), 2015 WL 1469506 (E.D.N.Y. Mar. 30, 2015).  Consequently, "a police officer may not 'neglect all

investigative duties in relying on a victim statement; [he] can only derive probable cause to effect an arrest from that statement 'absent circumstances that raise doubts as to the victim's veracity.'" *See Clark v. City of New York*, 09 CV 2533 (PKC), 2015 WL 5719612, at *6 (E.D.N.Y. Sept. 29, 2015) (citing *Parisi v. Suffolk Cnty.*, 04 CV 2187, 2009 WL 4405488, at *7 (E.D.N.Y. Nov. 30, 2009). Nor can an officer "disregard plainly exculpatory evidence." *See Sanders*, 2015 WL 1469514, at *8. Here, because there are many facts in dispute which call into question Seminara, Ortlieb, and Henderson's veracity and the reliability of their identifications of plaintiff, and because defendant Freed personally participated in fabricating evidence to support the false arrest, probable cause cannot be determined as a matter of law, and thus summary judgment is inappropriate.

As an initial matter, viewing the evidence in a light most favorable to plaintiff, defendants Seminara, Ortlieb, and Henderson are not quintessential victims as defendants attempt to argue. They were far more involved in the case and investigation then a "classic" civilian victims and, as members of the NYPD, they had access to information and relationships with the investigating detectives that a civilian victim would not have available to them. *See* PCS ¶ 43. There is also a distinct lack of evidence in support of defendants Seminara, Ortlieb, and Henderson's allegations that they were fired upon at least six times by the individual whom they pursued based on the ballistic evidence recovered from the scene and from the officers' weapons, which reveals that they fired their weapons nineteen times, in response to purportedly being fired upon at least six times. *See* PCS ¶¶ 27-36. In fact, only eighteen shell casings and eighteen deformed bullet fragments were documented by the crime scene unit (hereinafter "CSU") officers during the early morning search of the location on September 6, 2010. *See* PCS ¶ 37. Furthermore, the nineteenth shell casing allegedly found during the afternoon search on September 6, 2010 appears to have not

9

been present during the first search based on the CSU photographs produced in discovery.  *See* PCS ¶¶ 38-39.  These facts call into question the veracity and reliability of the officers' accounts of what transpired during the purported shooting and further call into question the officers' truthfulness with respect to the entire investigation into plaintiff's arrest, as well as the reliability of their identifications.  Moreover, the evidence that defendants Seminara, Ortlieb, and Henderson were not fired upon provides a motive for them to lie during the investigation into the purported shooting insofar as it is patently improper to fire at a fleeing misdemeanant or felon who does not present a significant threat to the safety of the officer or third parties.  *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

The reliability of defendants Seminara, Ortlieb, and Henderson's photo and line-up identifications of plaintiff are further undermined by the fact that each admit that they had at most five seconds to observe the face of the purported shooter, at midnight, in a poorly lit area.  *See* PCS ¶¶ 5-25.  Additionally, after the purported shooting, none of the defendant officers could provide a more detailed description of the purported shooter, other than "male black with dark clothing."  *See* PCS ¶¶ 40-42.  Finally, there is ample evidence from which a jury could conclude that the lineup identifications themselves were tainted insofar as all three officers were exposed to a photo of plaintiff prior to their lineup identifications, and plaintiff was the only individual in the lineup, who, like the purported shooter, was wearing dark pants.  *See* PCS ¶¶ 82-93.  Based on the foregoing, and viewing the facts in a light most favorable to plaintiff, the lineup identifications were unreliable, and thus a question of fact exists as to whether the identifications established probable cause to arrest plaintiff.  *See Sanders*, 2015 WL 1469514, at *12 (finding a question of fact as to probable cause where the reliability of a police officer's photo array identification of the second robber was called into question by his prior misidentification of the first robber, evidence

that the officer had at most six seconds to view the second robber, that his view was obstructed, and the photo array was suggestive).

A jury could likewise conclude that Freed colluded with Seminara, Ortlieb, and Henderson in bringing about the false identifications and arrest of plaintiff based on the following facts. First, a jury could conclude Freed knew Seminara, Ortlieb, and Henderson were lying about the circumstances of the shooting based on the fact that Freed, a first grade detective charged with leading the investigating into the shooting, assessed the scene of the shooting and had access to the ballistic evidence, both which call into question Seminara, Ortlieb, and Henderson's claims with respect being shot at. *See* PCS ¶ 45. Second, as to witness Trevor Perez, Freed admittedly participated and led the interrogation of Perez, who was the only civilian witness who purportedly linked plaintiff to the shooting. *See* PCS ¶¶ 47-57. Perez testified at his deposition that he did so after being coerced. *See* PCS ¶¶ 47-57. In particular, Perez testified that during said interrogation, he was coerced into falsely implicating plaintiff in the shooting and that prior to acquiescing under pressure, he in fact exculpated plaintiff, telling the interrogating detectives, one of whom was Freed based on Freed's own testimony, that Perez knew plaintiff, that to Perez's knowledge, plaintiff was not present during the purported shooting, and that Perez had not even witnessed a civilian shooting at the police. *See id.* Among many other reasons, Perez's coercion is of particular significance because Freed admits that he needed Perez to link plaintiff to the shooting in order to have a basis to place plaintiff's photo in the photo array, which was prepared within minutes of Perez's coerced identification, and which was then showed to Seminara within a very short time thereafter. *See* PCS ¶¶ 60-62. In fact, without Perez, Freed did not have any evidence linking plaintiff to the shooting. *See* PCS ¶ 57. Thus, had Freed not coerced Perez, plaintiff would never have been arrested. Viewing these facts in a light most favorable to plaintiff, a jury could conclude

11

that Freed knew that the shooting itself was questionable, and that Freed coerced Perez so that he could justify creating a sham photo array to show to Seminara, leading to the false arrest of plaintiff on September 6, 2010, and the tainted lineup identifications the next day.

Moreover, by the time the lineup identifications were conducted on September 7, 2010, Freed was in possession of additional compelling exculpatory information, including plaintiff's alibi statement, which had been corroborated by plaintiff's cousin Alhue Gayle and by plaintiff's cell phone records, which proved that plaintiff was in Manhattan at the time of the shooting, as well as access to plaintiff's MetroCard. *See* PCS ¶¶ 73-81. Freed described the alibi as one of the most detailed he ever heard. *See* Klein Decl. Ex. 6, Freed Dep. 21:17-22:11. Freed also had knowledge that surveillance video existed which could and did exonerate plaintiff. *See* PCS ¶ 79. Finally, contrary to defendants' claim that Freed had no duty to investigate the foregoing exculpatory evidence, where, as here, there is ample evidence providing a basis to question the veracity of the purported victims, Seminara, Ortlieb, and Henderson, and where Freed possessed exculpatory evidence from Perez, Gayle, and from plaintiff himself, an officer does in fact have a duty to investigate. *See Clark*, 2015 WL 5719612, at *6 (holding that "a police officer may not 'neglect all investigative duties in relying on a victim statement . . . [under] circumstances that raise doubts as to the victim's veracity"); *Sanders*, 2015 WL 1469514, at *8 ("an officer may not disregard plainly exculpatory evidence").

For the above reasons, the identifications of plaintiff by Seminara, Ortlieb, and Henderson did not provide probable cause to arrest plaintiff because a jury could conclude that the photo array and lineup identifications were charades which were orchestrated by defendants Freed, Seminara, Ortlieb, and Henderson in an effort cover-up police misconduct, all of which were facilitated by

and likewise arose from the coerced false identification of plaintiff Trevor Perez by defendant Freed.

### B.  All of the defendant officers were personally involved in plaintiff's false arrest

Defendants further argue that plaintiff's false arrest claims are dismissible for lack of personal involvement.  *See* Defs.' Mem. of Law, pp. 9-10.  "[P]ersonal involvement is a prerequisite to a finding of liability under § 1983.  *See Wong v. Yoo*, 649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009).  "Personal involvement may be established by a showing of direct participation, meaning 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'"  *Id.* (citing *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).  For the reasons stated at Point I (A) *supra*, a jury could clearly conclude that all four defendants were personally involved in the false arrest of plaintiff.  In particular, a jury could conclude that Freed coerced Perez, prepared the sham photo array and lineups, and failed to investigate or otherwise ignored exculpatory evidence, all of which led plaintiff's false arrest.   A jury could further conclude that defendants Seminara, Ortlieb, and Henderson participated in the investigation of the purported shooting, provided fabricated evidence regarding the shooting, and then knowingly, not mistakenly, falsely identified plaintiff as the individual who purportedly fired at them, to further the arrest and prosecution of plaintiff, and to cover up their own misconduct.

### POINT II

### MALICIOUS PROSECUTION SHOULD PROCEED TO TRIAL

Defendants argue that plaintiff's malicious prosecution fails because defendant Freed purportedly did not initiate or continue plaintiff's underlying prosecution, there was probable cause for plaintiff's arrest, and because malice was lacking.  *See* Defs. Mem. of Law pp. 10-16.  To

survive a summary judgment motion on a malicious prosecution claim, plaintiff must present facts sufficient to show that: "(1) the defendant[s] initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding [could] succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *See Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997). At summary judgment, a plaintiff may rely on his own testimony to establish his malicious prosecution claim. *Rentas v. Ruffin*, 14 CV 2475, 2016 WL 877828, at *4 (2d Cir. Mar. 8, 2016). For the reasons that follow, plaintiff has established a question of fact as to each element of his malicious prosecution claim.

### A. The defendant officers initiated a criminal prosecution against plaintiff

There is ample evidence in the record from which a jury could conclude that defendant Freed, Seminara, Henderson, and Ortlieb initiated a prosecution against plaintiff. "[C]ourts have found triable issues of fact as to the initiation element where a defendant police officer 'brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors.'" *See Wong*, 649 F. Supp. 2d at 65 (citing *Espada v. Schneider,* 522 F.Supp.2d 544, 553 (S.D.N.Y. 2007); *Ricciuti,* 124 F.3d at 130; *Llerando–Phipps v. City of New York,* 390 F.Supp.2d 372, 382–83 (S.D.N.Y. 2005)). Moreover, "when an 'officer provide[s] false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the . . . officer's initial, potentially tortious behavior.'" *Rentas*, 2016 WL 877828, at *3 (citing *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010).

Here, viewing the facts in a light most favorable to plaintiff, defendants Seminara, Henderson and Ortlieb created false information that they were fired upon, that they had an opportunity to see the purported shooter's face, and that plaintiff was the purported shooter. *See*

14

PCS ¶¶ 5-42, 47-56, 65, 84-90. Defendant Freed further created false evidence that Trevor Perez identified plaintiff as the shooter and thereafter aided in defendants' Seminara, Henderson and Ortlieb's sham identifications of plaintiff as well. *See* PCS ¶¶ 5-42, 47-56, 65, 84-90. All four defendants further admit to forwarding said information to prosecutors. *See* PCS ¶¶ 96-101. Based on the foregoing, a reasonable fact finder could conclude that all four defendants forwarded false information to the Kings County District Attorney's Office leading to the initiation and continuation of the criminal proceedings against plaintiff. *Wong*, 649 F. Supp. 2d at 65-66 (declining to grant summary judgment on a malicious prosecution claim and holding that a reasonable fact-finder could determine that the defendant officer did more than report a crime and serve as witness where he deliberately made false statements to the police regarding the events leading to the plaintiff's arrest and travelled to court at least once in relation to plaintiff's case). Insofar as plaintiff has set forth facts supporting the inference that the defendant officers forwarded false information to the District Attorney's Office, whatever judgments may have been exercised by prosecutors thereafter has no effect on the liability of the officers. *See Rentas*, 2016 WL 877828, at *3.

Furthermore, defendants' argument that the prosecution against plaintiff was initiated by the identification of plaintiff by defendants Seminara, Ortlieb, and Henderson, and that Freed was thus not involved, likewise fails because plaintiff has presented evidence from which a jury could conclude that that Freed was personally involved in the scheme to pin the purported shooting on plaintiff by coercing Perez, when within minutes of the purported shooting the defendants could not describe the shooter with any specification, assisting in bringing about the tainted identifications by Seminara, Ortlieb, and Henderson, and by disseminating the false identifications to the prosecution, all of which is sufficient to establish his involvement in the malicious

prosecution of plaintiff.  *See Ricciuti,* 124 F.3d at 131 (holding that a jury could conclude that defendant Lopez was implicated in a conspiracy to maliciously prosecute the plaintiffs based on his knowingly taking part in the distribution of a confession he knew to be false and, along with his co-defendant, lying about the circumstances of plaintiff's arrest).

### B.  Probable cause was lacking

Defendants further argue plaintiff's malicious prosecution claim fails because there was probable cause for his arrest and that there is no evidence that probable cause dissipated during the pendency of the prosecution.  "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York."  *Sanders*, 2015 WL 1469514, at *14 (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)).  "Further, an 'indictment by a grand jury creates a presumption of probable cause,' that 'may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"  *Sanders*, 2015 WL 1469514, at *14 (citing *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010); *see also, Savino*, 331 F.3d 63, 73 (holding that "to survive a motion for summary judgment on [a] malicious prosecution claim, [plaintiff] must have submitted evidence sufficient for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad faith"); *Richards v. City of New York*, 97 CV 7990 (MBM), 2003 WL 21036365, at *14 (S.D.N.Y. May 7, 2003) (holding that "evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith can overcome the presumption)."  Here, for the reasons stated, *supra*, at point I (A), questions of fact exist as to whether there was to arrest plaintiff. Furthermore, defendants' claim that probable cause did not dissipate during the pendency of the

prosecution is clearly without merit considering that by at least September 24, 2010, the charges were proven to be completely groundless by via the viewing of surveillance footage that conclusively exonerated plaintiff, and by plaintiff passing a lie detector test. *See* PCS ¶¶ 106-107.

Defendants further argue that the grand jury indictment created a presumption of probable cause and in a somewhat related but flawed argument set forth in defendants' motion at Point II (D), that plaintiff may not rely on a claim that defendants Freed, Seminara, and Henderson provided false testimony to the grand jury to overcome probable cause. Defs.' Mem. of Law, pp. 13-16. These arguments fail because viewing the evidence in a light most favorable to plaintiff, plaintiff has sufficiently rebutted the presumption created by the grand jury indictment to prevail on his malicious prosecution claim by presenting evidence not just that defendants Seminara and Henderson lied in the grand jury, and that the indictment was procured by fraud, perjury, and the suppression of evidence, and was undertaken in bad faith by defendants Freed, Seminara, Henderson, and Ortlieb. *See Sanders*, 2015 WL 1469514, at *14; *Richards*, 2003 WL 21036365, at *14. In particular, a jury could conclude that defendants Seminara, Henderson, and Ortlieb lied about the circumstances of their weapons discharge and their ability to identify the purported shooter, that Freed coerced Perez into falsely identifying plaintiff in order to justify the knowingly false photo array identification by Seminara, which led to the knowingly false lineup identifications by Seminara, Ortlieb, and Henderson, without which purported probable cause would never have been established. *See e.g.*, PCS ¶¶ 5-42, 47-56, 60-65, 84-90. *See Sanders*, 2015 WL 1469514, at *14-15 (citing *Manganiello*, 612 F.3d at 162 ("[w]here there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable

cause created by the indictment may be overcome."). Defendant Freed's bad faith can also be inferred from his withholding of the coerced witnesses' signed statement from ADA Lieberman, by his false characterization to ADA Lieberman of the witness as a "confidential informant," and by his failure to produce Perez when requested to do so by ADA Lieberman. *See* PCS ¶¶ []. *See Sanders*, 2015 WL 1469514, at *15-16. Finally, the sworn testimony of Trevor Perez that he affirmatively exculpated plaintiff when he was interrogated regarding the incident in of itself creates a question of fact as to whether defendants had evidence in their possession which negated probable cause. *See* PCS ¶¶ []. *See Richards*, 2003 WL 21036365, at *19.

### C. Defendants Freed, Seminara, Ortlieb, and Henderson acted with malice

Defendants further argue that plaintiff has not presented facts in support of his claim that defendants acted with malice. Because a lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment, defendants' argument fails in this regard. *See e.g., Rentas*, 2016 WL 877828, at *4; *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) ("Once we find an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well."). *See also*; *Ricciuti*, 124 F.3d at 130; *Sanders*, 2015 WL 1469514, at 16 (collecting cases); *Anderson v. City of New York*, 817 F.Supp.2d 77, 91 (E.D.N.Y. 2011). Here, because plaintiff has raised a question of fact regarding probable cause as argued extensively at Points I (A) and II (B), *supra*, plaintiff has consequently also raised a question of fact as to malice sufficient to withstand summary judgment. S*ee Boyd,* 336 F.3d at 78. Therefore, defendants' motion for summary judgment on plaintiff's malicious prosecution claim should be denied.

## POINT III
## RIGHT TO FAIR TRIAL SHOULD PROCEED TO TRIAL

Defendants argue that plaintiff cannot maintain a denial of right to fair trial claim because even if it were found that defendants conveyed false information, the falsifications were testimonial and thus cannot form the basis of plaintiff's claim pursuant to *Rehberg v. Paulk*, 132 S. Ct. 1497, 1505-07 (2012).  Defendants' argument fails for the reasons that follow.

"A plaintiff establishes a denial of the right to fair trial claim by showing that the defendant fabricated evidence that was likely to influence a jury, forwarded that information to prosecutors, and that the plaintiff suffered a deprivation of liberty as a result." *Garnett v. City of New York*, 13 CV 7083 (GHW), 2014 WL 3950904, *12 (S.D.N.Y. Aug. 13, 2014) (citing *Ricciuti*, 124 F.3d at 129-130); *see also Struthers v. City of New York*, 12 CV 0242 (JG), 2013 WL 2390721, *13 (E.D.N.Y. May 31, 2013).  The existence of probable cause is not a defense.  *Ricciuti*, 124 F.3d at 130.  Furthermore, contrary to defendants' assertion, *Rehberg* "did not grant absolute immunity to '*all* activity that a witness conducts outside of the grand jury room.'" *Garnett*, 2014 WL 3950904 at *13 (citing *Rehberg*, 132 S. Ct. at 1507, n. 1).  "Accordingly, courts in this Circuit have declined to grant absolute immunity to officers for allegedly falsifying evidence such as a post-arrest affidavit that contained allegedly false information." *Garnett*, 2014 WL 3950904 at *13 (citing *Dowling v. City of New York*, 11 CV 4954 (NGG)(RML), 2013 WL 5502867, at *7 (E.D.N.Y. Sept. 30, 2013)).  They have also held a defendant could be held liable for his false narrative of arrest which he provided to plaintiff's arresting officer, who forwarded the information to prosecutors, and for filing false criminal court complaints.  *See Maldonado v. City of New York*, 11 CV 3514, 2014 WL 787814, *10 (S.D.N.Y. Feb. 26, 2014); *Brown v. City of New York*, 08 CV 5095 (FB) (MDG), 2013 WL 1338785, *6 (E.D.N.Y. April 1, 2013).  A right to fair trial claim can also be based on evidence that a police officer fabricated or suppressed evidence relating to an

19

arrest. *See McCaffrey v. City of New York*, 11 CV 1636 (RJS), 2013 WL 494025, at *13 (S.D.N.Y. Feb. 7, 2013). *See also, Sanders*, 2015 WL 1469514, at *17.

Here, plaintiff has demonstrated that defendant Freed coerced Trevor Perez into falsely identifying plaintiff, and that he used Perez's false identification to create and justify the improper and tainted photo array and lineups which led to plaintiff's arrest and prosecution. *See* PCS ¶¶ *See* PCS ¶¶ 47-56, 60-65, 84-90. Freed then lied to ADA Lieberman by misrepresenting that Trevor Perez was a "CI", by withholding the fact that Perez had been coerced into giving a false identification, by withholding Perez's coerced written statement, and by withholding access to Perez from ADA Lieberman, who asked Freed to produce him a number of times, all in an effort to conceal the fact that Perez had been coerced. *See* PCS ¶ 101. Here, Freed both fabricated the identification and withheld evidence, both of which are acts sufficient to sustain a right to fair trial claim. *See Maldonado*, 2014 WL 787814, at *10; *Brown*, 2013 WL 1338785, at *6; *McCaffrey*, 2013 WL 494025, at *13; *Sanders*, 2015 WL 1469514, at *17. Plaintiff has further presented evidence from which a jury could conclude that defendants Seminara, Ortlieb, and Henderson's identifications were not mistaken, but rather that they intentionally falsely identified plaintiff in said tainted lineups in an effort to pin the shooting on plaintiff and cover-up their own misconduct. *See* PCS ¶¶ 5-42, 65, 84-90. All four defendants thereafter forwarded the false fabricated evidence that they were shooting victims to the Kings County District Attorney's Office, and to ADA Lieberman in particular, resulting in plaintiff being prosecuted for, among other serious charges, Attempted Murder in the First Degree. *See* PCS ¶¶ 96-105. Finally, defendants' arguments with respect to the applicability of *Brady v. Maryland*, 373 U.S. 83 (1963) at Point III (B) are also unavailing because plaintiff has not brought a claim alleging his *Brady* rights were violated, but rather has brought a right to fair trial claim. As discussed above, a right to fair trial can be sustained

based on evidence that a police officer fabricated or suppressed evidence relating to an arrest.  *See* Defs.' Mem. of Law, pp. 19-20; s*ee McCaffrey*, 2013 WL 494025, at *13.  *See also*, *Sanders*, 2015 WL 1469514, at *17.

## POINT IV
## FAILURE TO INTERVENE IS WITHDRAWN

Plaintiff withdraws his failure to intervene claim insofar as questions of fact exist as to the *direct* involvement of each of the defendant officers in violating plaintiff's rights.[2]

## POINT V
## QUALIFIED IMMUNITY SHOULD BE DENIED

Defendants next argue that they are entitled to qualified immunity for plaintiff's false arrest and malicious prosecution claims.  *See* Defs.' Mem. of Law, pp. 21-22.  "Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act."  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (internal quotation marks omitted); *see also*, *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007).  The right to be free from arrest without probable cause is a clearly established right.  *See Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).  Summary judgment should not be granted on qualified immunity grounds where the material facts of a claim are in dispute and those facts bear on the question of whether the defendants' conduct was objectively reasonable.  *See e.g.*, *Jenkins*, 478 F.3d at 88-90; *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003); *Green v. City of New*

---

[2] Defendants argue that plaintiff's failure to intervene claim fails because plaintiff cannot state a violation of an underlying constitutional right, or in the alternative, because plaintiff has, however, alleged that all four defendants were directly involved and thus a failure to intervene claim cannot lie.  *See* Defs.' Mem. of Law, pp. 20-21.  For the reasons stated *supra*, plaintiff has established a question of fact as to violations of his constitutional right not be falsely arrested, not to be maliciously prosecuted, and not to be denied his right to fair trial.

*York*, 465 F.3d 65, 83 (2d. Cir. 2006); *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002); *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999).

Defendants do not appear to dispute that plaintiff's right to be free from false arrest, malicious prosecution, and right to fair trial are clearly established. Rather, defendants argue that Seminara, Henderson, and Ortlieb are entitled to qualified immunity because they were not personally involved in the constitutional violation, and that Freed is entitled to qualified immunity because he acted reasonably in believing probable cause existed to arrest plaintiff based on Seminara, Henderson, and Ortlieb's identifications. *See* Defs.' Mem. of Law, pp. 21-22. Defendants' arguments fail because, for the reasons set forth *supra*, plaintiff has established questions of fact as to both the involvement of all four defendants in his arrest and prosecution, and as to the existence of probable cause to arrest and prosecute plaintiff. Because plaintiff has set forth genuine issues of material fact as to both his false arrest, malicious prosecution, and right to fair trial claims, and the facts directly bear on the question of whether defendants Freed, Seminara, Henderson, and Ortlieb's conduct was reasonable, summary judgment on qualified immunity grounds is inappropriate. *See e.g.*, *Jenkins*, 478 F.3d at 88-90; *Curry*, 316 F.3d at 335; *Green*, 465 F.3d at 83; *Mickle*, 297 F.3d at 122; *Thomas*, 165 F.3d at 144.

## POINT VI
## CLAIMS AGAINST JOHN DOE I

To the extent the Court determines that plaintiff's claims against John Doe I are dismissible, the claims should be dismissed *without prejudice*. *See Watkins v. Doe*, 04 CV 0138 (PKC), 2006 WL 648022, at *3 (S.D.N.Y. Mar. 14, 2006).

## POINT VII
## PLAINTIFF'S STATE LAW CLAIMS

Defendants' arguments for the dismissal of plaintiff's state law claims also fail.

### A.  Defendant City of New York is liable via the theory of *respondeat superior*

Defendants first argue that plaintiff cannot maintain a claim against the City of New York under the theory of *respondeat superior* because plaintiff has failed to establish that an individual acting within the scope of his or her employment committed a culpable act.  This argument is clearly without merit because plaintiff has established questions of fact as to plaintiff's state law claims for false arrest and malicious prosecution against defendants Freed, Seminara, Henderson, and Ortlieb, as the elements of state law false arrest and malicious prosecution claims are substantially the same as those of Section 1983 false arrest and malicious production claims.  *See Weyant*, 101 F.3d at 852; *Jackson v. City of New York*, 939 F. Supp. 2d 235, 250 (E.D.N.Y. 2013).  Furthermore, "a municipality may be held liable for common law false arrest and malicious prosecution on a theory of *respondeat superior.*"  *See Anderson v. City of New York*, 817 F. Supp. 2d 77, 98 (E.D.N.Y. 2011) (citing *Chimurenga v. City of New York,* 45 F.Supp.2d 337, 344 (S.D.N.Y.1999).  Because there are disputes of material fact that preclude summary judgment on the Section 1983 false arrest and malicious prosecution claims as argued at Points I and II, *supra*, summary judgment on the state law false arrest and malicious prosecution claims are precluded as well.  Therefore, plaintiff can recover against the City of New York under the common law doctrine of *respondeat superior*.  *Anderson*, 817 F. Supp. 2d at 98.

### B.  The individual defendants are not entitled to governmental immunity

Defendants next argue that even if it is found that plaintiff's constitutional rights were violated by the defendant officers, they are nonetheless entitled to governmental immunity.  "New York good faith immunity provides that a government employee is immune from suit 'for those government actions requiring expert judgment or the exercise of discretion . . . when the action involves the conscious exercise of a judicial or quasi-judicial nature.'"  *See Bradley v. City of New*

*York*, 04 CV 8411 (RWS) (MHD), 2007 WL 232945, at *12 (S.D.N.Y. Jan. 26, 2007) (quoting *Arteaga v. State*, 532 N.Y.S.2d 57, 58-59 (1988). "With respect to police officers, it has been held that the good faith immunity defense is a qualified immunity, to which the individual Defendants 'would not be [entitled if] they undertook the prosecution of plaintiff unreasonably or in bad faith.'" *See Bradley*, 2007 WL 232945, at *12 (citing *Davis v. City of New York*, 373 F.Supp.2d 322, 339 (S.D.N.Y.2005). Governmental immunity does not apply to the acts of police officers "deviat[ing] from clearly accepted and established protocols and procedures." *Rodriguez v. City of New York*, 189 A.D.2d 166, 178 (1st Dept. 1993) (quoting *Weiss v. Fote*, 7 N.Y.2d 579, 585 (1960)) (police officer's act of firing at suspect with crowd of people in between and hitting plaintiff, in violation of such protocols and procedures, did not implicate "judgmental error" rule). Further, "where there are disputed issues of fact regarding the reasonableness of Defendants' actions and whether those actions were taken in bad faith, summary judgment is inappropriate." *See Bradley*, 2007 WL 232945, at *12; *see also*, *Rosen v. City of New York*, 667 F. Supp. 2d 355, 362-63 (S.D.N.Y. 2009) (holding that where there are disputed facts as to a defendants' actions in response to a fight the Court could not determine whether the defendant acted unreasonably or in bad faith, nor could the Court determine as a matter of law whether defendant is entitled to immunity).

Here, as discussed extensively with respect to the plaintiff's federal claims for false arrest, malicious prosecution, and denial of right to fair trial, plaintiff has established questions of fact as to whether defendants Freed, Seminara, Ortlieb, and Henderson acted in bad faith when they participated in arresting and prosecuting plaintiff. Consequently, defendants Freed, Seminara, Ortlieb, and Henderson are not entitled to governmental immunity. *See e.g.*, *Bradley*, 2007 WL 232945, at *12, *Rodriguez*, 189 A.D.2d at 178, *Rosen*, 667 F. Supp. at 362-63.

### C.  Plaintiff has established a question of fact as to his battery claim

Defendants assert that plaintiff's battery claim should be dismissed because plaintiff has not pled specific allegations to support such a claim.  For the reasons that follow, plaintiff's battery claim against defendant City of New York should go to the jury.  Under New York Law, if an arrest is determined to be unlawful, any use of force against a plaintiff may constitute a battery, regardless of whether the force would be considered reasonable during a lawful arrest.  *Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 581-82 (S.D.N.Y. 2002); *Johnson v. Suffolk County Police Dep't*, 665 N.Y.S.2d 440, 440 (2d Dep't 1997) (holding that a police officer committed a battery when he touched the plaintiff during an unlawful arrest) (citing *Budgar v. State of New York*, 414 N.Y.S.2d 463, 466 (1979) ("since the arrest was unlawful, a technical assault and battery occurred when the claimant was handcuffed and forcibly placed in the State police car")).  Here, plaintiff has set forth triable issues of fact as to his false arrest, and consequently he has also established questions of fact as to whether he was subjected to a battery when he was handcuffed by a New York City police officer during his false arrest.  *See* PCS ¶ 95.  *See Budgar*, 414 N.Y.S.2d at 466. Regardless of whether plaintiff can identify the particular officer or officers who placed the handcuffs on plaintiff's wrists, defendant City of New York is responsible for the officer or officers' actions via *respondeat superior*.  *See* Point VII (A), *supra*; *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 184 (E.D.N.Y. 2010).

### D.  Supplemental jurisdiction should be exercised over plaintiff's state law claims

Because plaintiff has established a question of fact as to all of his federal claims and related state law claims as set forth above, the Court should consequently exercise supplemental jurisdiction over plaintiff's state law claims.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment should be denied

and the matter set down for trial, together with such other relief to plaintiff as the Court deems just

and proper.

Dated: Brooklyn, New York
            March 17, 2016

BRETT H. KLEIN, ESQ., PLLC
Attorneys for the Plaintiff
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132

By:        /s/ Brett H. Klein
            BRETT H. KLEIN, ESQ. (BK4744)
            LISSA GREEN-STARK (LG7510)
